James Howard TURNER

v.

The STATE OF TENNESSEE.

No. 3–87–0152.

United States District Court,
M.D. Tennessee,
Nashville Division.

June 12, 1987.

Edward M. Yarbrough, J. Russell Held-
man, Hollins, Wagster & Yarbrough, Nash-
ville, Tenn., for plaintiff.

Kymberly Lynn Anne Hattaway, Asst.
Atty. Gen., Nashville, Tenn., for defendant.

## MEMORANDUM

WISEMAN, Chief Judge.

Petitioner James Howard Turner, await-
ing retrial in a state criminal court on
charges of murder and kidnapping, seeks
issuance of the writ of habeas corpus pur-
suant to 28 U.S.C. §§ 2241(c)(3) and
2254(a). Petitioner asserts that his impend-
ing retrial will deprive him of his Sixth
Amendment right to the effective assist-
ance of counsel and his Fourteenth Amend-
ment right to due process of law free of
vindictive prosecution. For the reasons

and pursuant to the conditions stated below, the Court concludes that the writ should issue.

## I. Factual Background [1]

Petitioner was convicted by a jury on February 9, 1983 of first degree (felony) murder and two counts of aggravated kidnapping. Before and during this trial, he was represented by local counsel, Thomas C. Binkley,[2] and by an attorney from Socorro, New Mexico, named Lance Bailey.

The charges against Turner stemmed from an incident in 1980 in which several men kidnapped and murdered a man named Monty Hudson and kidnapped Hudson's wife, Elizabeth. According to testimony in the transcript and to other materials in the record, Hudson apparently sold bogus silver to at least one of Turner's codefendants, Earl Carroll, to whom Turner had loaned some $6,000 for the purchase. Carroll and a third codefendant, Sam John Passarella, were accused of abducting Hudson from the parking lot of a Nashville hotel. Hudson later was murdered.

Carroll received a plea-bargained sentence of two years for simple kidnapping in exchange for his testimony and other cooperation. Passarella was convicted by a jury of two counts of aggravated kidnapping in a trial separate from Turner's [3]; he was sentenced to 70 years' imprisonment.

Turner, who allegedly abducted Mrs. Hudson from the same hotel parking lot in a separate car and later released her unharmed, was charged with two counts of aggravated kidnapping and one count of felony murder. Passarella's trial, at which both Carroll and Mrs. Hudson testified, took place in 1982 after Turner requested severance.

Turner received several plea offers before his trial commenced. Before and after he was indicted, prosecutors made offers of two-to-ten years and four-to-ten years in an attempt to gain Turner's cooperation in the effort to find Hudson's body. These offers were rejected. In the week preceding trial, the prosecutors [4] offered Turner a plea bargain of a two-year unsuspended sentence in return for a plea of guilty to a felony—essentially the same offer that Carroll earlier had accepted. This offer [5] remained open until noon on February 4, 1983, three days before trial, a deadline for settlements imposed by order of the court; the offer was never withdrawn.

Turner had rejected the earlier plea offers requiring longer sentences. In the

1. The Court held no evidentiary hearing of its own in this case, but has reviewed the relevant materials in the record, including the 245–page transcript (hereinafter Transcript) of the evidentiary hearing held in 1983 by the state trial judge, Hon. Walter Kurtz of the Criminal Court of Davidson County, on the occasion of petitioner's post-conviction motion for new trial. The facts of this case also are set out in fuller detail in State v. Turner, 713 S.W.2d 327 (Tenn.Crim. App.1986), perm. app. denied, id. (Tenn.1986), cert. denied, —— U.S. ——, 107 S.Ct. 407, 93 L.Ed.2d 360 (1986).

2. The actions of Mr. Binkley, a member of the Nashville bar, are not at issue here. Judge Kurtz, who made a specific finding that Binkley's testimony was the credible version of events that he believed, found that Bailey was petitioner Turner's "lead attorney" who "in almost all respects ... controlled" both Turner and the litigation. Binkley's role was found to be "minor" and "insubstantial." State v. Turner, No. C–8536, Memorandum Opinion of October 26, 1983 at 3, 9 (hereinafter Turner I Memorandum).

3. Hudson's body was discovered after Passarella's trial but before Turner's trial, apparently as the result of information provided by Carroll. Thus, although the murder evidence apparently pointed to Passarella as the triggerman and to Turner only as an accomplice, Turner was charged with the murder of Hudson and Passarella was not. Turner I Memorandum at 2–3. Passarella apparently has not subsequently been charged with the Hudson murder.

4. The same assistant district attorney general, John Zimmerman, was a party to the plea negotiations during the immediate pretrial period, tried the case, and is responsible for plea negotiations now. See infra note 32.

5. The reason the final plea offer was so generous apparently was that Mrs. Hudson, who had testified at Passarella's trial, was apprehensive about testifying again at the Turner trial. This reluctance was shared by her family. Turner I Memorandum at 5. The State's principal motivation for the earlier offers apparently was its desire to find the body and to develop evidence against the codefendants. Transcript at 144–47. The body had been found before the final plea offer.

final week, Binkley discussed the two-year offer in a conference call with Bailey and the petitioner; he "recommended strongly" that Turner accept it. Turner, however, relying upon the advice of Bailey as to his prospects in trial, made a counteroffer to the prosecutors of one year, which was refused. Despite a repeated recommendation from Binkley that the continuing two-year offer be accepted, Turner continued to rely on the advice of Bailey[6] and let the deadline for settlement expire.

At trial, Turner was convicted on all three counts and sentenced to life imprisonment for murder plus 40 years on each kidnapping count, to be served concurrently. *Turner I* Memorandum at 3, 14.

About six months after trial, Judge Kurtz, after holding the evidentiary hearing, granted Turner's motion for a new trial based on the grounds that he had received ineffective assistance of counsel in making the decision to reject the two-year plea offer and to go to trial. *Turner I* Memorandum. The Court of Criminal Appeals affirmed in an unpublished opinion, and the Tennessee Supreme Court denied permission to appeal, concurring "in result only." *State v. Turner*, No. 83–287–III, slip op. (Tenn.Crim.App. Aug. 7, 1984), *perm. app. denied*, (Tenn. Dec. 17, 1984) (hereinafter *Turner I*).

During the pendency of appeals of *Turner I*, petitioner was detained pursuant to order of Judge Kurtz; he apparently has served more than two years already.

Upon remand to the trial court, petitioner and the State engaged in further plea negotiations in which the State offered 20 years in return for a plea to aggravated kidnapping and petitioner counteroffered a plea to simple kidnapping, which carries a maximum sentence of 10 years. After plea negotiations terminated, petitioner filed in the trial court a motion to reinstate the plea offer of two years, or in the alternative to dismiss the indictment.

Reasoning that granting the motion was the "only ... remedy which will neutralize the constitutional violation," Judge Kurtz ordered the State to reinstate the two-year offer within 15 days or face dismissal of the case (apparently with prejudice). He noted that the State had "offered no real explanation as to why the offer is now twenty" instead of two years, and observed that reinstatement of the offer represented "the opportunity lost by the ineffective assistance provided to the defendant." *State v. Turner*, No. C–8536, Memorandum and Order of February 28, 1985 (hereinafter *Turner II*).

The State received permission to apply for extraordinary appeal of this order.[7] The Tennessee Court of Criminal Appeals reversed, relying (1) upon state authorities for the proposition that a court cannot "require the state to make a particular plea offer"; (2) upon Tenn.R.Crim.P. 11(e)(1) for the proposition that a trial judge "shall not participate" in plea negotiations;[8] (3) upon state authorities and upon *Mabry v. John-*

---

**6.** Although Bailey testified at one point that he counseled Turner to "listen to what Mr. Binkley said" about the two-year offer, Transcript at 175, in other testimony he acknowledged that he was "optimistic" about the outcome of the trial and did not recommend that Turner accept the offer, Transcript at 176, 189–91. There was corroborating contemporaneous testimony at the evidentiary hearing that Bailey had an inflated estimate of his own abilities, an unrealistic estimate of the probabilities of outcome at trial, and a casual attitude toward trial preparation. Indeed, Bailey used cocaine and consorted with prostitutes during the weekend that preceded trial.

Observing live testimony from the petitioner and both his former lawyers, Judge Kurtz chose to credit the testimony of Binkley and of Turner, and to discredit the testimony of Bailey when he formed his conclusions about Bailey's

"control" of the case and about Turner's relative reliance upon the advice given by Bailey or Binkley. This Court gives Judge Kurtz's factual conclusions in this regard, based at least in part upon demeanor, the considerable deference required by 28 U.S.C. § 2254(d). *See Patton v. Yount*, 467 U.S. 1025, 1038 & n. 14, 104 S.Ct. 2885, 2892 & n. 14, 81 L.Ed.2d 847 (1984).

**7.** Technically, the State appealed the trial judge's denial of its motion that he reconsider or clarify his previous order. The appellate court deemed this no procedural bar to review of the underlying reinstatement order, because the State's intentions throughout were clear. *Turner II*, 713 S.W.2d at 329.

**8.** The state rule is identical in this respect to the language of Fed.R.Crim.P. 11(e)(1).

*son,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) for the proposition that any plea agreement is revocable and unenforceable until it is accepted by the court; and (4) upon *United States v. Morrison,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981) for the proposition that although remedies for constitutional deprivations "should be tailored to the injury suffered," they should not unnecessarily infringe on competing interests and only "rarely" result in dismissal of an indictment. *Turner II,* 713 S.W.2d at 329–30. The appeals court concluded that the appropriate remedy in the case was "remand for a new trial." *Id.* at 330. On further appeal, the Tennessee Supreme Court denied petitioner's application for permission to appeal, and the United States Supreme Court denied certiorari. *See supra* note 1 for full citations.

Petitioner's new trial date before Judge Kurtz is June 15, 1987. He filed his *habeas* petition in this Court on February 25, 1987.

## II. Preliminary Issues

Before proceeding to the merits of this petition, the Court must deal with three arguments, two procedural and one substantive, made by the State, any one of which would preclude consideration of the ultimate issue that Turner seeks to raise: that the Constitution requires reinstatement of the lost two-year plea offer. The three preliminary questions are: (1) Is petitioner "in custody" for purposes of the *habeas corpus* statutes? (2) Has he exhausted his state remedies? (3) On *de novo* review by this Court, was he denied effective assistance of counsel guaranteed by the Sixth Amendment? The Court will dispose of the two procedural issues in this part of the Memorandum and deal with the ineffectiveness question in part IIIA.

9. The party responsible for Turner's "custody" appears to be not the State of Tennessee, the named respondent, but rather Judge Kurtz or the Criminal Court of Davidson County. Technically, the case style of this petition ought to be amended to so reflect.

### A. Custody

■ Petitioner is currently on bond awaiting retrial. While the statutory language requires that a petitioner for *habeas corpus* be "in custody," the Supreme Court generally has construed this language to include, besides actual incarceration, "other constraints on a man's liberty, restraints not shared by the public generally." *Jones v. Cunningham,* 371 U.S. 236, 240, 83 S.Ct. 373, 376, 9 L.Ed.2d 285 (1963). Persons on bond awaiting trial generally are considered "in custody" for purposes of 28 U.S.C. § 2241. *Delk v. Atkinson,* 665 F.2d 90, 93 (6th Cir.1981); *see Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984); *Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973).

Treating pretrial detainees subject only to bond as "in custody" works no violence to state-federal comity because these petitioners nonetheless are still subject to the doctrine of exhaustion of remedies. *See Hensley, supra,* at 353, 93 S.Ct. at 1576; *Lydon, supra,* 466 U.S. at 301–02, 104 S.Ct. at 1809–10. The respondent's argument that Turner is not "in custody" is without merit.[9]

### B. Exhaustion of Remedies

The State further argues that, although Turner has satisfied the exhaustion requirement for his claim of entitlement under the Sixth Amendment to reinstatement of the plea offer, he has not exhausted state remedies on the issue of prosecutorial vindictiveness. The respondent thus does not challenge, but the Court treats on its own initiative,[10] the question of exhaustion of the issue of ineffectiveness of counsel. In order to decide fully what remedy is constitutionally mandated in this case, both issues must be exhausted.

10. Although the requirement for exhaustion is not jurisdictional, *Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 2062, 80 L.Ed.2d 674 (1984), in the Sixth Circuit this requirement is not waivable and must be treated by the Court *sua sponte. Harris v. Rees,* 794 F.2d 1168 (6th Cir.1986); *Bowen v. State of Tennessee,* 698 F.2d 241, 243 (6th Cir.1983) (*en banc*).

The doctrine mandating exhaustion of remedies in state courts before they ordinarily will be considered by a federal court arises from considerations of federal-state comity and requires a petitioner to:

> provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim. It is not enough that all the facts necessary to support the federal claims were before the state courts or that a somewhat similar state-law claim was made. In addition, the habeas petitioner must have "fairly presented" to the state courts the "substance" of his federal habeas corpus claim.

*Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982).

In cases in which there has occurred some factual development between the time an issue has been before the state courts and that same issue reaches a federal court, the Sixth Circuit has looked to the purpose of the exhaustion requirement and held that a claim is not exhausted if "new facts or evidence, not presented to the state courts" place a petitioner's claim "in a significantly different posture." *Sampson v. Love,* 782 F.2d 53, 55 (6th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 159, 93 L.Ed.2d 98 (1986).

1. *Sixth Amendment Claim*

■ Judge Kurtz squarely held in his *Turner I* opinion that the petitioner had been "denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution" as well as of Article One, Section Nine of the Tennessee Constitution. *Turner I* Memorandum at 12.

Ineffective assistance of counsel in Tennessee has been assessed under a "range of competence" standard adopted by the Tennessee Supreme Court in *Baxter v. Rose,* 523 S.W.2d 930 (Tenn.1975). This standard is for all practical purposes equivalent to the "incompetence" prong of the two-prong "incompetence and prejudice" test established for ineffectiveness by the United States Supreme Court in *Strickland v. Washington, supra.*

*Strickland,* which added a requirement of "prejudice" with a "probability sufficient to undermine confidence in the outcome" and clarified that counsel's performance should be assessed by an "objective standard of reasonableness ... under prevailing professional norms," was decided on May 14, 1984—after Judge Kurtz's decision in *Turner I* and before the Court of Criminal Appeals' affirmance. *Strickland* was cited, however, by petitioner's counsel in briefs submitted to both the Court of Criminal Appeals and the Tennessee Supreme Court and by the State in its application to appeal the intermediate appellate court decision to the Supreme Court. Nonetheless, neither state appellate court stated an explicitly federal ground for its affirmance of Judge Kurtz; it is possible, thus, that no state court in this case has assessed whether Turner suffered the "prejudice" required by *Strickland v. Washington,*[11] *supra.*

Even if this is so, however, this Court concludes that the exhaustion doctrine does not bar consideration by a federal court of the Sixth Amendment claim. First, it is clear that the trial judge made his finding

---

11. Judge Kurtz, writing before *Strickland* was decided, concluded "[t]hat Turner was prejudiced is evident; he was sentenced to life plus two (2) forty year sentences, when he had an opportunity to plead (to the lower penalty)." *Turner I* Memorandum at 12. Judge Kurtz also found that the two-year offer was "extremely generous," that any competent defense attorney would have seriously considered it and recommended acceptance by his client, and that Bailey was "overly optimistic about the outcome of the case, ... imparted this unrealistic feeling" to Turner, "greatly understated the risks involved in taking this case to trial," and gave an estimate of the probable outcome of trial which was either "purposefully wrong or negligently given." *Id.* at 5, 12.

The Court of Criminal Appeals in *Turner I,* giving no citation to federal law, affirmed all of these findings by the trial judge as fully supported by the evidence; the appellate court made no comment at all on Judge Kurtz's finding of prejudice. As noted *supra,* the Tennessee Supreme Court concurred in the result only when it denied the State's application for permission to appeal.

of ineffective assistance under the pre-*Strickland* federal standard. Second, the federal standard was called to the attention of the appellate courts by both parties on direct appeal.[12] Third, both the trial and appellate court in *Turner II* obviously *assumed* that there was a federal violation that needed to be remedied: despite their differing conclusions, each court cited the federal case law regarding remedies, *e.g.*, *United States v. Morrison, supra.* Fourth, no interest of federal-state comity would be served by resubmission of this case to the state courts. Regardless of any future holding on the *Strickland v. Washington* "prejudice" issue, petitioner still would be deprived of the relief he seeks (only perhaps on a different ground), and still would be required to return to this Court to obtain relief. Finally, any finding by a state court on the *Strickland* "prejudice" issue would be subject not to deference but instead to *de novo* review by this Court. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070.

Thus, the entire ineffectiveness of counsel issue, including both the alleged deprivation and its appropriate remedy, is eligible for review in this Court.

### 2. *Vindictive Prosecution Issue*

█ Petitioner argued to the trial court in *Turner II*, as one of three grounds for granting his motion to reinstate plea, that:

> Any less drastic remedy other than the relief requested in this motion would violate defendant's state and federal due process rights to be protected from a realistic likelihood of prosecutorial vindictiveness or an apprehension of the same. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Blackledge v. Perry*, 417 U.S. 21, 94

S.Ct. 2098, 40 L.Ed.2d 628 (1974); *U.S. v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 70 L.Ed.2d 74 (1982); and *Thigpen v. Roberts*, [468] U.S. [27], 104 S.Ct. 2916, 82 L.Ed.2d 23 (1984).

At the time this motion was made, the plea negotiations subsequent to the grant of a new trial were as stated in Part I *supra;* they have not changed. The vindictiveness issue was briefed by both sides at both state appellate levels in *Turner II,* although not dealt with explicitly by the Court of Criminal Appeals opinion.[13]

If there were any issue in this case of *actual* vindictiveness, the Court might agree that it was unexhausted; but petitioner has disclaimed that argument. Insofar as the "realistic likelihood of vindictiveness" is a factor to be considered in prescribing a remedy for the previous constitutional deprivation suffered by petitioner, that issue is exhausted.

### III. *Ineffective Counsel to Reject a Plea Offer—And Its Remedy*

### A. *Constitutional Deprivation*

Before turning to the issue of remedy, the Court first must answer two questions: Can incompetent advice by counsel to reject a plea offer ever violate the Sixth Amendment right to counsel, and, if so, do the circumstances of this case constitute such a violation?

### 1. *Rejecting a Plea Offer*

█ Neither the Supreme Court nor the Sixth Circuit ever has squarely held that incompetence of counsel that results in a defendant deciding to go to trial rather than plead guilty infringes the right to effective assistance of counsel guaranteed by the Sixth Amendment.[14]

---

**12.** The "fair opportunity" doctrine does not require that a state court must explicitly address an issue, if both parties have squarely addressed it. *Smith v. Digmon*, 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978).

**13.** *See supra* note 12.

**14.** The Supreme Court recognized that the Sixth Amendment right to counsel applied to the states in *Gideon v. Wainwright*, 372 U.S. 335, 83

S.Ct. 792, 9 L.Ed.2d 799 (1963); that the right to counsel includes the right to *effective* assistance of counsel in *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); that the right to effective assistance extends not only to appointed counsel but also includes retained counsel in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); and that the right extends to "critical" stages of pretrial proceedings in *Hamilton v. Alabama*, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).

It is well settled that the converse set of events does result in constitutional deprivation. In *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), the Court held that a defendant could seek to challenge a prior guilty plea if the waiver of rights therein could not be considered voluntary and intelligent due to ineffective assistance of counsel. *Accord, Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). In *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Court applied the *Strickland* criteria to guilty pleas and held that, to successfully challenge a plea, a defendant must establish a reasonable probability that, but for counsel's unreasonable errors, he would not have pleaded guilty and would have gone to trial. *Id.* at 57, 106 S.Ct. at 370, 88 L.Ed.2d at 210.

This Court has considered the argument that the Sixth Amendment provides asymmetrical protection to a criminal defendant engaged in plea negotiations, protecting against prejudicial advice by an attorney to plead but not protecting against prejudicial advice not to plead. Such a scheme would find some underpinning in the view that the right-to-counsel guarantee of the Sixth Amendment exists only to protect other rights, either "simply to ensure that criminal defendants receive a fair trial," *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, or to ensure that, when defendants plead guilty, their waivers of rights to a trial by jury, to confrontation, and against self-incrimination are knowing and voluntary. *See Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). In this asymmetrical view, a defendant electing not to plead and to go to trial waives no rights, indeed he does the very opposite by invoking his Sixth Amendment right to go to trial. What need then of counsel?

While this argument may have some intellectual appeal,[15] the Court concludes that it takes an unrealistic and fragmented view of this most critical stage [16] in the criminal process. Between seventy and ninety percent of indicted defendants eventually plead guilty. W. LaFave & J. Israel, *Criminal Procedure* § 1.4 at 16 (1985). Virtually all are faced with the decision whether to plead or to go to trial—"probably the most important single decision in any criminal case." 1 Amsterdam, Segal & Miller, *Trial Manual for the Defense of Criminal Cases* at 2–143 (1967). *See also Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308,

---

**15.** *Cf. Johnson v. Duckworth,* 793 F.2d 898, 900–02 (7th Cir.) (considering and rejecting this asymmetrical view of the application of the right to counsel to a defendant's decisionmaking in a case in which a plea offer made to defense attorney was rejected without client consultation), *cert. denied,* —— U.S. ——, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986); *Commonwealth v. Thomas,* 465 Pa. 442, 350 A.2d 847 (1976), in which the court said:

> It is particularly significant that counsel is not here accused of persuading appellant to waive any of his rights but rather suggested that he avail himself of all of the protection provided under our system of jurisprudence. It would be in only the most unusual cases where such advice could be deemed a basis for an ineffective assistance of counsel claim.

350 A.2d at 850 n. 3. Other state and federal courts considering cases in which a generous plea offer either was not communicated to a client and was rejected by the defense attorney, or was communicated to the client accompanied by ineffective advice, have treated the lawyer's functions as indivisible and assumed without lengthy analysis that the Sixth Amendment right to counsel protects both decisions to accept, as well as to reject, plea offers. *See, e.g., United*

States ex rel. Caruso v. Zelinsky, 689 F.2d 435 (3d Cir.1982); *Beckham v. Wainwright,* 639 F.2d 262 (5th Cir.1981); *Williams v. Arn,* 654 F.Supp. 226 (N.D.Ohio 1986); *State v. Kraus,* 397 N.W.2d 671 (Iowa 1986) (plea bargain stage is a "critical point" in a criminal proceeding); *Tucker v. Holland,* —— W.Va. ——, 327 S.E.2d 388 (1985); *State v. Ludwig,* 124 Wis.2d 600, 369 N.W.2d 722 (1985); *Young v. State,* 470 N.E.2d 70 (Ind.1984); *Rasmussen v. Arkansas,* 280 Ark. 472, 658 S.W.2d 867 (1983); *People v. Whitfield,* 40 Ill.2d 308, 239 N.E.2d 850 (1968) ("It follows logically that if a defendant has the right to make a decision to plead not guilty, he also has the right to make the decision to plead guilty."); *Hanzelka v. Texas,* 682 S.W.2d 385 (Tex.Ct.App. 1984); *State v. Simmons,* 65 N.C.App. 294, 309 S.E.2d 493 (1983); *Lyles v. State,* 178 Ind.App. 398, 382 N.E.2d 991 (1978) ("a decision of the utmost importance: whether or not to plead guilty"); *Commonwealth v. Napper,* 254 Pa.Super. 54, 385 A.2d 521 (1978).

**16.** Indeed, the Supreme Court has called plea-bargaining "an essential component of the administration of justice. Properly administered, it is to be encouraged." *Santobello v. New York,* 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).

3312, 77 L.Ed.2d 987 (1983) (decision whether to plead guilty one of four "fundamental decisions" facing a defendant in the criminal process).

This narrow view of the right to counsel has at least two flaws. One is that Sixth Amendment protection of the ineffectively counseled decision to plead guilty, but non-protection of the ineffectively counseled decision to go to trial, would ignore the reality that these two decisions are alternative outcomes of the same attorney-client interaction:

> After informing himself or herself fully on the facts and the law, the lawyer should advise the accused with complete candor concerning all aspects of the case, including a candid estimate of the probable outcome.... If the accused's choice on the question of a guilty plea is to be an informed one, the accused must act with full awareness of the alternatives, including any that arise from proposals made by the prosecutor.

ABA Standards for Criminal Justice 4–5.1(a), 4–6.2 commentary (2d ed. 1980).

To accept or to reject a plea offer presents a binary choice at a fork in the road; providing constitutional protection against an incompetent shove in one direction, but not against an equally incompetent shove in the other, may produce unwanted skewing of the results. Like the character in the short story, criminal defendants facing this choice under asymmetrical constitutional protection may begin to see one alternative as the lady and the other as the tiger. Unforeseeable and un-

desirable effects on the overall functioning of the plea-negotiation process could ensue.

The second flaw in the asymmetrical approach is that·it ignores the full implications of an ineffectively counseled decision to go to trial. A defendant in Turner's position has not merely rejected a plea offer; he has made a decision to go to trial "with a grave misconception as to the very nature of the proceeding and possible consequences." *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir.1981).

The plea-rejection decision thus necessarily implies a corollary election to go to trial. If the adversary system of plea negotiation has worked well, defense counsel's advice on the "choice among the alternative courses of action open to the defendant," *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970), has reflected a balancing of the more certain outcome under a guilty plea, the degree of uncertainty of result at trial, and the worst possible penalties that could result from trial.[17] *See Scott v. United States*, 419 F.2d 264 (D.C.Cir.1969).

Thus, whether one views the purpose of the right to counsel narrowly as "simply to ensure ... a fair trial," *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, or more broadly as to protect "the fundamental fairness of the proceeding" and to guard against "unreliable" results due to "a breakdown in the adversarial process," *id.* at 696–97, 104 S.Ct. at 2069, an incompetently counseled decision to go to trial appears to fall within the range of protection appropriately provided by the Sixth Amendment.[18] This Court concludes that ineffec-

---

**17.** Courts have been uniform in holding that a defense attorney's total failure to notify his client of a prosecutorial plea offer deprives a defendant of a decision rightfully his and thus constitutes Sixth Amendment ineffective assistance of counsel. *See, e.g., United States ex rel. Caruso v. Zelinsky, supra; Williams v. Arn, supra,* at 236 (citing cases). While total failure to communicate an offer sounds more egregious in one sense than the mere conveyance of unreasonably bad advice, a defendant ignorant of a plea offer nonetheless may have a perfectly well-informed assessment of his chances at trial. In this sense, a defendant like Turner who rejects a plea on the basis of unreasonable advice about his prospects at trial may be more compromised than a defendant merely ignorant of a

plea offer: he not only has lost an opportunity to make a bargain, he also is embarking upon a trial with a fundamentally distorted view of his prospects. *Cf. Beckham v. Wainwright, supra,* at 267.

**18.** Alternatively, even if the Sixth Amendment right to counsel were held inapplicable to plea rejections, a right to counsel might still attach to rejection decisions by operation of the Fourteenth Amendment due process clause. The argument would be that concerns for individual autonomy and fundamental fairness demand the effective assistance of counsel for any defendant bartering his liberty against the arrayed prosecutorial power of the State. *Cf. Gagnon v.*

tive advice to reject a plea offer does constitute a Sixth Amendment deprivation.

### 2. *Actual Ineffectiveness*

■ Was Bailey's conduct in this case both incompetent and prejudicial under the *Strickland* standard?

#### (a) *Incompetence*

In *Strickland, supra*, the Supreme Court counseled that judicial scrutiny of defense counsel's performance should be "highly deferential," avoid second-guessing, and begin with a "strong presumption" that counsel's conduct fell within "the wide range of reasonable professional assistance." 466 U.S. at 689, 104 S.Ct. at 2065. Deference is particularly due attorney decisions concerning strategy and tactics, *id.* at 689–90, 104 S.Ct. at 2065–66. Some circuit courts have concluded, thus, that this type of choice by counsel will be held ineffective only if it was "so patently unreasonable that no competent attorney would have chosen it" or it was so " 'ill-chosen' " as to render counsel's overall representation constitutionally defective. *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir.1983), *cert. denied*, 464 U.S. 1063, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984); *Adams v. Balkcom*, 688 F.2d 734, 738 (11th Cir.1982) (quoting *Washington v. Watkins*, 655 F.2d 1346, 1355 (5th Cir.1981)).

Weighed by even these highly deferential standards, Bailey's advice not to accept the two-year offer, or at the very least his failure to recommend acceptance, was well below an "objective standard of reasonableness." *Strickland, supra*, at 688, 104 S.Ct. at 2064.

Binkley "recommended strongly" acceptance of the offer at the time; he thought

the decision to go to trial was "ludicrous." Transcript at 16–17. John Rodgers, who as assistant district attorney general was responsible for the earlier plea offers to Turner, testified that the final two-year offer "obviously ... was a great offer and should have been accepted." Transcript at 157. James Neal, a well-known criminal defense attorney who represented Carroll in this case, told Binkley contemporaneously that Turner would "be crazy not to take" the two-year offer. Transcript at 7. On *de novo* review of this question, this Court agrees with Judge Kurtz's conclusion that Bailey's actions on the plea decision were outside the bounds of reasonableness established by professional norms.

#### (b) *Prejudice*

The test by which prejudice must be measured is the mirror image of the test established in *Hill v. Lockhart, supra*. Has the petitioner established by objective evidence that there is a reasonable probability that, but for the incompetence of counsel, he would have accepted the two-year offer and pleaded guilty?

Turner testified that if Bailey had ever advised him to accept the offer, he "would have taken it, because I relief on his judgment." Transcript at 112–13. This testimony, by itself, is subjective, self-serving, and in the Court's view insufficient to satisfy the *Strickland* requirement for prejudice. There is objective evidence in the record, however, that tends to corroborate Turner's claim and provides independent reason to believe that there is a significant probability that, had Bailey's advice been reasonable, Turner would have accepted the offer.

---

*Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The issue then would become whether the same, or a more attenuated, standard of effectiveness should be required of counsel's advice to reject under a due process analysis than under a Sixth Amendment analysis. See, however, the discussion in text *supra* re skewed incentives.

An ineffectively counseled decision to accept a plea may result in an unintelligent and involuntary waiver of rights but nonetheless provide

a reliable determination of guilt or innocence. If the purpose of the Sixth Amendment right to counsel is only to provide "one of the crucial assurances that the result of the proceeding is reliable," *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, perhaps the better view would be that the Sixth Amendment applies directly to neither decisional outcome of a plea offer. Both decisions to accept *and* decisions to reject, however, *would* be protected by a due process right to counsel.

Turner's response to the two-year offer was to propose a one-year counteroffer. This fact itself rebuts the State's argument that Turner's publicly and privately professed belief in his innocence would have prevented a plea. Moreover, as Binkley testified, the mandatory parole date for a one-year sentence was nine months, and the mandatory parole date for a two-year sentence was thirteen and a half months— leaving only a four-and-a-half month difference in time actually to be served under the offer and the counteroffer. Only a small difference remained between offer and counteroffer, and therefore only a small change in Bailey's advice might have closed the gap. Finally, Judge Kurtz concluded on the basis of the proof at the hearing *and* of "the Court's own observations during the course of this litigation," that "Turner at all times appeared to be under Bailey's control." *Turner I* Memorandum at 3. This factual finding based upon demeanor is entitled to considerable deference under 28 U.S.C. § 2254(d). *Patton v. Yount, supra.*

On *de novo* review, this Court concludes that there is objective evidence in the record "sufficient to undermine confidence in the outcome" so that petitioner has met his burden of establishing that there is a reasonable probability that, but for Bailey's incompetence, he would have accepted the two-year offer and pled guilty. The requirements of *Strickland, supra,* and *Hill, supra,* are satisfied. Petitioner was denied the effective assistance of counsel guaranteed by the Sixth Amendment.

### B. *The Remedy*

■ In *United States v. Morrison, supra,* the Supreme Court observed that remedies for deprivation of the Sixth Amendment right to counsel generally should be "tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." 449 U.S. at 364, 101 S.Ct. at 668. The Court described its approach as "to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial." *Id.* at 365, 101 S.Ct. at 668.

Counsel have characterized the remedial problem presented by this case as one of first impression, but the Court is not without analogous precedent upon which to draw. Indeed, the lost opportunity to accept a plea offer, in this case due to ineffective advice of counsel, can be generalized as one of several species of a group of cases that could be termed "disentitled pleas." These cases include a: (1) plea offer accepted by a defendant, accepted by the court, and then not adhered to by the government;[19] (2) plea offer accepted by a defendant, accepted by the court, and then withdrawn by a defendant acting upon ineffective assistance of counsel;[20] (3) plea offer accepted by a defendant, and then erroneously rejected by the court;[21] (4) plea offer accepted by a defendant, relied upon to his detriment by the defendant, then withdrawn by the government before accepted by the court;[22] (5) plea offer never communicated to a defendant, and rejected by his attorney;[23] and (6) plea offer, as here, rejected by a defendant acting upon ineffective assistance of counsel.[24]

Surveying this group of cases, several remedial principles emerge: First, the federal courts, for reasons of federal-state comity and of equitable discretion, if at all possible should leave the choice of the most appropriate remedy to the state court. *Santobello, supra,* 404 U.S. at 262–63, 92 S.Ct. at 498–99 (plurality) and 263–67, 92

---

**19.** *See, e.g., Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

**20.** *See, e.g., Beckham v. Wainwright, supra.*

**21.** *See, e.g., United States v. Delegal,* 678 F.2d 47 (7th Cir.1982).

**22.** *See, e.g., State v. Brockman,* 277 Md. 687, 357 A.2d 376 (1976); *Government of the Virgin Is-*

*lands v. Scotland,* 614 F.2d 360, 365 & n. 14 (3d Cir.1980) (dictum); *Annot.,* 16 A.L.R.4th 1089.

**23.** *See, e.g., United States ex rel. Caruso v. Zelinsky, supra; Williams v. Arn, supra,* and cases cited therein; *see also supra* note 15.

**24.** *See, e.g., Commonwealth v. Napper, supra; Tucker v. Holland, supra.*

S.Ct. at 499–501 (Douglas, J., concurring). Second, in appropriate cases, some weight should be given to the defendant's choice of remedy. *Id.* at 267, 92 S.Ct. at 501 (Douglas, J., concurring) and 267–69, 92 S.Ct. at 501–02 (Marshall, Brennan, and Stewart, JJ., dissenting) (thus comprising a majority of the seven-Justice *Santobello* Court).

Third, the Constitution, while permitting specific performance as one within a range of permissible remedies, even in the most extreme case of prosecutorial misconduct may not necessarily *require* specific performance. *Mabry v. Johnson,* 467 U.S. 504, 510 & n. 11, 104 S.Ct. 2543, 2548 & n. 11, 81 L.Ed.2d 437 (1984); *Santobello, supra.* Fourth, when a *court* has contributed to the event that disentitled the defendant of the plea, specific performance has been ordered. *United States v. Delegal, supra* (abuse of discretion in rejecting plea); *State v. Kraus,* 397 N.W.2d 671 (Iowa 1986) (judge encouraged ineffectively counseled defendant to reject plea and go to trial). Finally, in the absence of either prosecutorial misconduct or judicial involvement, no reviewing court, either on direct appeal or collateral review, appears ever to have required the trial court to compel reinstatement of the disentitled plea offer.[25]

For remedial purposes, classes (5) and (6), *supra,* appear constitutionally indistinguishable. In each the defendant has gone to trial when there was a reasonable probability that, but for his attorney's conduct, he would have accepted an existing plea offer. In each there has been no prosecutorial or judicial misconduct. In each there has been no indication whether, had the unfulfilled plea agreement been tendered to the Court, it would have been accepted.[26]

Most courts in these two classes of cases simply have vacated the conviction resultant from the first trial and have ordered a new trial.[27] As some courts have noted, however, the availability of a new (second) trial alone is hardly an appropriate remedy at all. First, those defendants who went to trial simply without knowing of an offer their attorney failed to communicate presumably were convicted in trials that were thoroughly fair. Second, even those defendants who, as here, may have embarked on their first trials with mistaken notions of their prospects,[28] seek relief from their convictions upon the basis of the incompetent representation that *led to* the trial, not upon any that may have occurred at trial. Neither the first nor a second fair trial remedies the specific deprivation they have suffered. "One more fair trial, or even a series of them, would not necessarily re-

---

**25.** In *Beckham v. Wainwright, supra,* in which the defense attorney incompetently advised his client to withdraw a court-accepted plea and face trial under the erroneous belief that his client, if convicted at trial, could not be given a greater sentence than in the plea agreement, the Eleventh Circuit affirmed the relief ordered by the district court that:

> Petitioner be allowed to reinstate his original guilty plea and thereupon be resentenced by the Court or alternatively that he be granted a new trial within a reasonable period of time hereafter, failure of which the Writ of Habeas Corpus will be granted and the Petitioner released from custody.

639 F.2d at 267 n. 3. Thus, it is unclear who was to select among the alternatives.

**26.** The State has argued vigorously that *Mabry v. Johnson, supra,* in which the Supreme Court denied relief to a defendant who accepted a plea offer upon competent advice of counsel, and then lost it when the government reneged before the offer was presented to the court, establishes a principle that unaccepted plea agree-

ments are without constitutional significance and, therefore, that *Mabry* controls the outcome of the present case. In *Mabry,* there was no detrimental reliance by the defendant, who had competent counsel, and no other deprivation of her Sixth Amendment rights. 467 U.S. at 510 n. 10, 104 S.Ct. at 2548 n. 10. The Court held that the defendant had not been deprived "of liberty or any other constitutionally protected interest." *Id.* at 507, 104 S.Ct. at 2546.

In this case, this Court already has found that petitioner was deprived of his right to counsel as guaranteed by the Sixth Amendment or, in the alternative, by the due process clause of the Fourteenth Amendment. *See supra,* note 15. *Mabry,* thus, cannot control this case.

**27.** *See, e.g., State v. Whitfield, supra,* 239 N.E.2d at 852; *Hanzelka v. State, supra,* 682 S.W.2d at 387; *State v. Simmons, supra,* 309 S.E.2d at 498. *Cf. State v. Ludwig, supra,* 369 N.W.2d at 728 (new trial; this apparently was relief sought by defendant).

**28.** *See supra,* note 17.

vive the lost chance." *State v. Kraus, supra,* 397 N.W.2d at 674; *see United States ex rel. Caruso v. Zelinsky,* 689 F.2d at 438.

Because the remedy of a "new trial" is not tailored to the constitutional injury suffered, those courts that have ordered only that remedy appear at first to have stopped short of adequate relief. Upon further reflection, it may be that the "new trial" ordered by these courts was a form of shorthand for "new trial with the opportunity to resume plea-bargaining." Indeed, several other courts in classes (5) and (6) have made this elaboration explicit. *See Napper, supra, Lyles, supra; Tucker, supra; cf. Beckham, supra.*

If resumption of plea bargaining were all that is required to purge the constitutional taint, this Court could stop here and deny the writ. Resumption unquestionably has occurred here, and has stalled in the fashion described *supra.* The issue presented, however, becomes: Is resumption alone enough?

The court in *Napper* ordered resumption of bargaining without further directions.[29] 385 A.2d at 524. The court in *Lyles* ordered a guilty plea hearing "assuming ... the State's offer continues." 382 N.E.2d at 994. The *Tucker* court ordered tender of the former offer for consideration by the court, leaving open the possibility the court might reject it. 327 S.E.2d at 396.

What happened at the trial level in these cases upon remand is not revealed by the published decisions. Presumably offers were made and accepted. Perhaps if the prosecutor withdrew the offer or the court rejected it, the defendant might later have claimed that the action was barred by the due process safeguard against vindictiveness.

In this Court, however, that issue has been exhausted for determination. The parties and the state courts appear to have viewed the question as: Should the State's subsequent offer of 20 years be subject to a presumption of vindictiveness under the teachings of *North Carolina v. Pearce, Blackledge v. Perry, United States v. Goodwin,* and *Thigpen v. Roberts, supra?*

This Court frames the issue a little differently, viewing the State's actual offer as not before it.[30] What *is* before the Court, rather, is the question: Is *any* subsequent plea offer to Turner, higher than that extended before his first trial, subject to the due process presumption of prosecutorial vindictiveness? Because the answer to this question must be in the affirmative, the Court concludes that the appropriate remedy for this petitioner must be a plea hearing at which the petitioner, if he chooses, would, as in *Tucker v. Holland, supra,* present the former offer as a completed agreement for consideration by the trial court under the usual procedures of Tenn. R.Crim.P. 11.[31] At this hearing, the prosecutor, if he chooses, could seek to show to the Court that there are objectively demonstrable reasons why the State should not be bound by the old offer and, therefore, should be allowed to rescind the "agreement" presumptively created for consideration by the Court. The showing required perforce must be of a manner and type sufficient to rebut the *Pearce-Blackledge-Goodwin* presumption of vindictiveness. If made, a satisfactory showing would rescind the two-year bargain and free the parties to negotiate as usual.

In *United States v. Goodwin, supra,* the Supreme Court laid out a structure for determining the circumstances in which a "realistic likelihood" of official retaliatory behavior against a person who has exercised a constitutional right is sufficiently high to warrant adoption of an "inflexible,"

---

**29.** The *Napper* court added without explanation: "We cannot compel the Commonwealth to reinstate its plea bargain offer; nor can we dictate what sentence may be imposed if appellant pleads guilty without so advantageous an offer as he had before, or if he goes to trial and is again convicted." 385 A.2d at 524.

**30.** *See* text following note 13 *supra.*

**31.** This Court sees no conflict between the remedy it prescribes and the relevant Tennessee rules. To the extent such a conflict might exist, state law would be required by the Supremacy Clause to yield to the Constitution. U.S. Const. art. 6, cl. 2.

though rebuttable "presumption of vindictiveness." 457 U.S. at 381, 384, 102 S.Ct. at 2429, 2494. Central to the Court's reasoning was an analysis of (1) the "nature of the right asserted" and (2) the timing of the prosecutor's action. *Id.* at 381–83, 102 S.Ct. at 2492–93.

The Court held that the erection of the presumption was particularly warranted in situations in which, first, the action taken by the defendant resulted in "duplicative expenditures of prosecutorial resources" and the State is required "to do over what it thought it had already done correctly," particularly if the prosecutor has a "personal stake"[32] or if there is "institutional pressure that ... might ... subconsciously motivate a vindictive prosecutorial ... response to a defendant's exercise of his right to obtain a retrial of a decided question." *Id.* at 377, 383, 102 S.Ct. at 2491, 2494. Second, at least in charging situations, the presumption is less warranted before trial but more warranted after a defendant has been through a trial, when the State has had the opportunity to fully discover and assess all of the information against a defendant, and thus "a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated." *Id.* at 381, 102 S.Ct. at 2493.

Like the defendants held entitled to the presumption in *Pearce, Perry,* and *Thigpen, supra,* Turner has been through a trial, successfully asserted his constitutional right to a subsequent proceeding, and now returns to the trial court seeking a Constitutional remedy "tailored to the injury." *Morrison, supra.* The Court holds that the structural analysis of *Goodwin* requires a finding of a realistic likelihood of vindictiveness in this situation and demands application of a rebuttable presumption of vindictiveness to any plea offer made by the State in excess of its previous offer on the eve of the first trial.[33]

The Court holds, thus, that while petitioner has no absolute[34] right to the remedy of specific performance of the former plea offer, any action of the prosecutor to withdraw that offer is subject to the due process restraint against vindictive prosecutorial action. The former plea offer in this case remained open until the court-imposed deadline immediately prior to trial; the State did not withdraw it and petitioner did not competently reject it. Now that the petitioner's constitutional infirmity has been cured and he has been provided competent counsel, the State is free to withdraw the offer, so long as that withdrawal is free of a reasonable apprehension of vindictiveness.

**32.** Because the same prosecutorial office and the same prosecutor, Mr. John Zimmerman, has been responsible for the conduct of the *Turner* case before, during, and after the first trial, no issue is raised in this case of the effect on the *Goodwin* presumption if different prosecutors were involved at the two plea-offer stages. *Cf. Thigpen v. Roberts,* 468 U.S. 27, 104 S.Ct. 2916, 82 L.Ed.2d 23 (1984) (leaving unresolved whether presumption applies to "two independent prosecutors").

**33.** The Court recognizes that application of the presumption to a plea offer is not a settled proposition, but it perceives no theoretical bar. Judges prescribe sentences within statutory limits; prosecutors seek indictments or file informations constrained by probable cause; plea offers find their range within similar limits of statutorily prescribed penalties and potential acceptability to the court. In the admittedly unusual circumstances presented by this case, application of the presumption presents no great threat to the normal and desirable exercise of

prosecutorial discretion endorsed by the Supreme Court in *Goodwin* and in *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

*Bordenkircher's* holding that no presumption of vindictiveness should apply to escalation of charges that occurs in the give-and-take of pretrial bargaining does not prevent application of the presumption in the present circumstances, in which the plea offer at issue comes *after* a full trial.

**34.** The Court rejects petitioner's argument that, by analogy to *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), due process compels the State to provide him a state-created benefit to which he lacks entitlement as a matter of constitutional right, but of which was deprived by an independent constitutional deprivation. A plea offer standing alone cannot be likened to a formal state procedure that creates a property interest; by definition it is an offer awaiting acceptance.

As the Supreme Court noted in *Thigpen, supra,* 468 U.S. at 32 n. 6, 104 S.Ct. at 2920 n. 36 and in *Goodwin, supra,* 457 U.S. at 376 n. 8, 102 S.Ct. at 2490 n. 8, the presumption of vindictiveness is rebuttable "by objective evidence justifying the prosecutor's action." *Id.* In the Sixth Circuit, this requires "objective, on-the-record explanations." *United States v. Andrews,* 633 F.2d 449, 456 (6th Cir.1980) (*en banc*), *cert. denied,* 450 U.S. 927, 101 S.Ct. 1382, 67 L.Ed.2d 358 (1981).

As stated *supra,* this Court for reasons of federalism and of deference to the trial-level court, *Santobello, supra,* holds that the appropriate forum to make these determinations is the Criminal Court of Davidson County. Moreover, an attempt by this Court to anticipate what showing the State might attempt in rebuttal would be premature. Without prejudging any particular showing the State might make, however, it would seem that objective evidence supporting a nonvindictive increase in a plea offer should be based on new facts or evidence that are not direct fruits of the previous deprivation or trial, were unknown at the time of the previous offer, and were discovered by means either independent of information gained from the first trial or at least the product of inevitable discovery.[35]

## IV.   Conclusion

To sum up, the Court finds *inter alia* that Turner is in custody for purposes of the relevant statute; that he has exhausted state remedies on the issues of the appropriate remedy for deprivation of his right to counsel and the application of the presumption of vindictive prosecution to the subsequent plea bargaining; that he received ineffective assistance of counsel in contravention of the Sixth Amendment and/or the due process clause; that the remedy tailored to neutralize this deprivation includes presentation of the previous two-year plea offer for acceptance by the petitioner and by the trial court, that the prosecutor may seek to rescind this presumptively mandated bargain subject to a showing that would overcome a presumption of vindictiveness; and that the forum in which this determination should be made is the state trial court.

For the reasons stated above, an appropriate order shall issue, conditioning the issuance of the writ upon satisfaction of the conditions stated above.

## ORDER

For the reasons stated in the accompanying Memorandum, the writ of habeas corpus shall issue within 30 days unless the trial court holds a plea hearing at which (1) petitioner has an opportunity, if he chooses, to present the former two-year offer as a presumptively completed plea agreement for consideration by the court; and (2) the prosecutor has the opportunity, if he chooses, to seek rescission of the putative agreement conditioned upon an objective showing sufficient to rebut the presumption of prosecutorial vindictiveness under the *Blackledge v. Perry* line of precedents. Of course, the trial judge is otherwise free to accept or reject any plea agreement offered, including the two-year plea, in accordance with the criteria otherwise applicable under substantive and procedural law.

The petitioner's trial is stayed pending execution of the terms of this Order.

---

**35.** *See Andrews,* 633 F.2d at 456 n. 10; *see also, e.g., Hardwick v. Doolittle,* 558 F.2d 292, 301 & nn. 6–7 (5th Cir.1977), *cert. denied,* 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978); *cf. Brewer v. Williams,* 430 U.S. 387, 406 n. 12, 97 S.Ct. 1232, 1243 n. 12, 51 L.Ed.2d 424 (1977).

The focus should be on evidence rebutting a reasonable apprehension of vindictiveness, not merely rebuttal of actual subjective vindictiveness. *See Wasman v. United States,* 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984) (five-Justice concurrence).