Commonwealth *v.* Washington, Appellant.

Submitted March 10, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Hugh S. Rebert,* Assistant Public Defender, for appellant.

*Kenneth J. Sparler*, Assistant District Attorney, and *Donald L. Reihart*, District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., March 29, 1976:

On October 21, 1971, a jury found appellant and two co-defendants, Eddie Carroll and Henry Padgett, guilty of robbery, assault and battery with intent to rob, aggravated assault and battery, and assault and battery. On October 30, 1972, after denial of post-trial motions, appellant was sentenced to one and one-half to three years' imprisonment, to be served after the expiration of a sentence of two and one-half to five years imposed on the same day on an unrelated armed robbery indictment. On appellant's direct appeal, we affirmed *per curiam. Commonwealth v. Washington*, 225 Pa. Superior Ct. 749, 306 A.2d 361 (1973).

In July, 1973, appellant filed a petition under the Post Conviction Hearing Act[1] alleging that his trial counsel, the then Chief Public Defender of York County, was ineffective in failing to give timely notice of an alibi defense, as was then required by Rule 312 of the Pennsylvania Rules of Criminal Procedure.[2] Counsel's omission precluded the alibi witness, Patricia Grimes, from testifying that she and appellant had been at her aunt's house at the time the robbery was alleged to have been committed.[3]

---

1. Act of Jan. 25, 1966, P.L. (1965) 1580, §1 *et seq.*, eff. March 1, 1966, 19 P.S. §1180-1 *et seq.*

2. Pa.R.Crim.P. 312, 19 P.S. Pamphlet. In *Wardius v. Oregon*, 412 U.S. 470 (1973), the United States Supreme Court held that the due process clause of the Fourteenth Amendment to the United States Constitution "forbids enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants." *Id.* at 472. Relying upon *Wardius*, the Pennsylvania Supreme Court declared Rule 312 unconstitutional. *Commonwealth v. Contakos*, 455 Pa. 136, 314 A.2d 259 (1974).

3. Pa.R.Crim.P. 312(b).

On October 2 and 17, 1973, a hearing was held on appellant's PCHA petition.[4] In denying the petition, the hearing judge held that the ineffectiveness claim had been waived since it had not been raised on direct appeal (Opinion of April 18, 1974, at 2). Since, however, appellant's counsel on the appeal had also represented him at trial, the ineffectiveness claim was properly presented in the PCHA proceeding, *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975), and we shall therefore address it on the merits. We have concluded that appellant's trial counsel had no strategic basis for failing to give timely notice of an alibi witness, and that this failure cannot be said to be harmless beyond a reasonable doubt, *Chapman v. California*, 386 U.S. 18 (1967). Consequently, since appellant was denied his constitutional right to the effective assistance of counsel, a new trial must be awarded.

I

-A-

The Commonwealth's only witness at trial was Frank Martin, the victim. Martin, an insurance agent, testified that on December 11, 1970, he was robbed and beaten by appellant and his co-defendants while he was making collections for an insurance company. Martin further testified that the incident had occurred approximately fifty to one hundred feet from an intersection, that the night was overcast, and that the street lights were illuminated. He made an unequivocal in-court identification of all three co-defendants (Trial Record at 6, 10).

The cross-examination of Martin by appellant's

---

4. At the hearing, appellant with the permission of the court orally amended his PCHA petition to allege grounds for relief in addition to ineffective counsel. In light of our disposition of the case, however, we need not consider these additional contentions.

counsel[5] demonstrates that the issue of identification was an important part of the defense's trial strategy. Thus on cross-examination the following facts were disclosed. On the evening of the day of the robbery, Martin was shown an array of fifty to sixty photographs but was unable to identify any of his assailants. Five days later, Martin was shown fifteen photographs, from which he identified appellant and co-defendant Padgett (Trial Record at 13-14, 17). Finally, on February 10, 1971, immediately prior to a scheduled lineup at the York County Jail, Martin was shown four photographs, from which he identified the three co-defendants. When defense counsel learned of this, he objected, and the lineup was cancelled (Trial Record at 16).

The February 10 identification had formed the basis for a pretrial motion to suppress identification. At a hearing on the motion, held on April 27, 1971, the alleged suggestiveness of the identification was explored in detail. Thus, the following exchange took place between Martin and defense counsel concerning the circumstances surrounding the photographic display at the York County Jail:

"Q. Isn't it a fact that when you went down to City Hall and Mr. Robertson [police detective] showed you these photographs he wanted to refresh your memory and recollection before going to the lineup?

A. Yes.

Q. And he told you their names and who they were?

A. Yes.

Q. And he told you they were the four [6] defendants in this action, did he not?

A. Yes." (Suppression hearing, at 10.)

---

5. Appellant's counsel also represented the other co-defendants.

6. One Theodore Palmer was initially a suspect along with Carroll, Padgett, and appellant Washington. The charges against Palmer were dropped, however, due to Martin's inability to identify him. (Suppression hearing, at 14.)

-B-

In light of the foregoing, production of an alibi witness by the defense would have buttressed its attempt to undermine the identification testimony of the Commonwealth's only witness. Defense counsel conceded as much at the PCHA hearing:

"Q. Getting back to the relevancy of the alibi defense, I believe under direct examination you testified that the alibi was never really an issue. If the question basically was one of identification, wouldn't the fact that the defendant had a possible alibi have an influence on whether or not that identification was valid?

A. I'd have to agree, Mr. Rebert, that we inquired [sic] information from Mr. Padgett and filed an alibi application for him. It would have been just as relevant for Mr. Washington.

Q. Then it was an issue?

A. Certainly, I would think if you find basic information available, it would be one to be used, yes." (PCHA hearing, at 35.)

At trial, however, in explaining his failure to file proper notice of alibi defense, defense counsel disclaimed any prior knowledge of the alibi witness' existence:

"MR. RUTH [defense counsel]: Your Honor please, I had filed a notice of alibi on behalf of Padgett. I have no individual recollection [sic] of Mr. Washington or Mr. Carroll advising me of an alibi or of the witness that just left the witness stand being available. They have informed me that some time ago I did interview her and did discuss with them her testifying. I just don't know, Your Honor. We have nothing in my file to show it." (Trial Record, at 30.)

Counsel's explanation at the time of trial poses two questions. First, does the record support counsel's statement that he had no prior knowledge of the alibi witness's existence? Second, if counsel in fact knew of the alibi witness's existence, was he

ineffective in failing to file the notice required by Rule 312, thereby precluding the witness from testifying?

## II

### -A-

## WAS TRIAL COUNSEL IGNORANT OF THE EXISTENCE OF THE ALIBI WITNESS?

Significantly, the hearing judge in his opinion denying PCHA relief observed that "[w]e cannot conclude however that defense counsel was unaware of the alibi witness" (Opinion at 2). This amounts to a finding that counsel was aware of the witness. As such, it is amply sustained by the testimony adduced at the PCHA hearing.

Appellant testified at the PCHA hearing that he and Patricia Grimes, who was his girlfriend and the alibi witness, had visited the Public Defender's office and had told trial counsel that Grimes would testify as an alibi witness (PCHA hearing, at 3). Eddie Carroll, one of appellant's co-defendants, testified that he had told trial counsel at the York County Jail that appellant, Carroll, Grimes, and one Ernestine Thompson (Carroll's girlfriend and Grimes's aunt) had been together at Thompson's house at 339 South Duke Street in York at the time of the robbery (PCHA hearing, at 45). Grimes gave similar testimony. Although she described the South Duke Street address as her aunt's house, this apparent discrepancy may be reconciled by the fact that Thompson was Carroll's girlfriend. She corroborated appellant's contention that she and appellant had visited trial counsel and had informed him that she would testify that she had been with appellant at the South Duke Street address from about 3:00 to 8:00 P.M. (the robbery had occurred around 6:00 P.M.).

The testimony given by appellant, Carroll and

Grimes—who all had an obvious interest in the outcome of the case—was corroborated by certain records of the Public Defender's office. Trial counsel (who, it will be recalled, was the Chief Public Defender of York County at the time) testified that a check of the records had disclosed that appellant had had an appointment at the Defender's office at 4:00 P.M. on February 3, 1971—eight months before appellant's trial, and during the period in which appellant was on bail awaiting trial (PCHA hearing, at 28). Even more important was a notation in trial counsel's handwriting on appellant's application for Public Defender representation, that appellant "claims at girlfriend's house, Ernestine Kinnard, 339 South Duke Street (in hospital now), Ernestine, Pat Grimes (same place) Dorothy?" (PCHA hearing, at 26). Trial counsel conceded that this notation could have been made no later than February 28, 1971—months before the trial and well in advance of the time deadline imposed by Rule 312 of the Pennsylvania Rules of Criminal Procedure. Trial counsel testified that he had no recollection of interviewing Grimes, but "can't categorically say I didn't see her" (PCHA hearing, at 33), but this testimony does not undo the effect of the records of the Public Defender's office itself, which show that trial counsel, contrary to his position at trial, did know of the existence of the alibi witness.

-B-

*WAS COUNSEL INEFFECTIVE IN FAILING TO COMPLY WITH PA.R.CRIM.P. 312?*

The standard against which counsel's performance is to be measured has been frequently repeated:

"[O]ur inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests ... Although weigh the alternatives

we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis." *Commonwealth v. Bronson*, 457 Pa. 66, 71, 321 A.2d 645, 647 (1974), *quoting Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604-605, 235 A.2d 349, 352-353 (1967) (emphasis in the original).

The question presented by this case is whether counsel is ineffective when the record shows that his failure to file a notice of alibi defense was not the result of a conscious choice, made by counsel as part of trial strategy, but rather had *no* reasonable basis designed to effectuate his client's interests. In approaching this question, it is to be remembered that counsel's failure to file an alibi notice embraces the antecedent failure to investigate the strength or weakness of the possible alibi and then to decide, based upon that investigation, whether to call the alibi witness.

At the PCHA hearing, trial counsel attempted to justify his failure to file notice that Patricia Grimes would be an alibi witness:

"If the witness would not support the client in almost 100% of his testimony, it would be my opinion very dangerous to call them. If you allert [*sic*] the district attorney's office that there is a possible witness that discredit [*sic*] the defendant, you then give the district attorney's office ammunition to hurt your defendant." (PCHA hearing, at 66).

Certainly, trial counsel might have legitimately concluded, after due investigation, that appellant's defense would be better served by foregoing Grimes's alibi testimony. A deliberate tactical choice of this nature could not form the basis for an ineffectiveness claim. *Commonwealth v. Owens*, 454 Pa. 268, 274, 312 A.2d 378, 381 (1973) (failure to call alibi witness is not *per se* ineffective assistance of counsel); *Commonwealth v. Karchella*, 449 Pa. 270, 273, 296 A.2d 732, 733 (1972) (equivocal alibi testimony); *Commonwealth v. Robinson*,

232 Pa. Superior Ct. 328, 332, 334 A.2d 687, 689 (1975) ("alibi" witnesses would not have provided alibi); *United States v. Chaney*, 446 F.2d 571, 577 (3d Cir.), *cert. denied*, 404 U.S. 993 (1971) (alibi witnesses could not specify the time when they had seen the defendant); *Gravenmier v. United States*, 399 F.2d 677, 678 (9th Cir. 1968) (no proof that alibi witnesses existed); *Bolden v. United States*, 266 F.2d 460, 461 (D.C. Cir. 1959) ("alibi" witness recanted alibi testimony); *Cornell v. State of Maryland*, 396 F.Supp. 1092, 1100 (D. Md. 1975) (same); *United States ex rel. Jones v. Brierley*, 276 F.Supp. 567, 571 (E.D. Pa. 1967) (alibi witnesses would in fact contradict alibi).

The problem, however, with counsel's attempted justification of his failure to file the notice of alibi is that it is belied by the record of appellant's trial, since, as discussed *supra* in Part IB of this opinion, counsel at that time professed ignorance of the alibi witness's existence. Since this ignorance was unjustified (as the record of the PCHA hearing shows and the hearing judge found), it is apparent that the failure to file the notice of alibi can be explained only by concluding that counsel failed to explore a possible defense open to appellant. *United States v. Lucas*, 513 F.2d 509, 511-512 n.6 (D.C. Cir. 1975) (BAZELON, C.J.) (counsel's duty to make appropriate factual and legal investigations to determine possible defenses); *United States ex rel. Williams v. Follette*, 408 F.2d 658, 660 (2d Cir. 1969) *vacated on other grounds McMann v. Richardson*, 397 U.S. 759 (1970), *on remand*, 453 F.2d 745 (2d Cir. 1971) (counsel's affirmative obligation to make inquiry to determine if suitable defenses exist). As the Fourth Circuit aptly observed in *United States v. Fisher*, 477 F.2d 300, 302-303 (4th Cir. 1973), "[a] defendant who is subjected to the possibility of incarceration is entitled to have the avenues of defense explored by his counsel during the preparation of the case." *Accord*, ABA Project on Standards for Criminal Justice, Standards Relating to the Defense Function §4.1, at 225-228 (Approved Draft, 1971).

For the foregoing reasons, we conclude that trial counsel's failure to give notice of an alibi defense was not grounded upon a conscious choice made after a consideration of the strategic options available to the defense. Since counsel did not make a "considered choice, made with a 'reasonable basis,' " *Commonwealth v. McGrogan*, 449 Pa. 584, 591, 297 A.2d 456, 460 (1972), we conclude that counsel was ineffective.

## III

Finally, we cannot conclude that the failure to file the notice of alibi was harmless error. As has already been discussed, the Commonwealth's only witness was the victim of the crime. The defense had, in pre-trial proceedings and at trial, attacked the victim's identification of his assailants as suggestive. Certainly, Grimes's alibi testimony might have led the jury to examine the allegedly suggestive identification more closely. We cannot say that counsel's failure to pursue the only defense available to appellant was harmless error. *Johns v. Perini*, 462 F.2d 1308, 1314 (6th Cir.), *cert. denied, Perini v. Johns*, 409 U.S. 1049 (1972); *Gomez v. Beto*, 462 F.2d 596, 597 (5th Cir. 1972).

It might be argued that the error was harmless because the jury would undoubtedly have disbelieved the alibi witness's testimony. (Grimes, it will be recalled, was appellant's girlfriend and hence an interested witness.) Her credibility, however, is to be assessed by the factfinder at trial, and not by the hearing judge or appellate court in PCHA proceedings. *Commonwealth v. Adams*, 465 Pa.     ,     , 350 A.2d 412, 416 (1976); *Commonwealth v. Owens*, 454 Pa. 268, 273 n.5, 312 A.2d 378, 381 n.5 (1973); *Commonwealth v. Smith*, 442 Pa. 265, 268 n.1, 275 A.2d 98, 100 n.1 (1971).

The order of April 18, 1974, denying post-conviction relief is accordingly reversed, and a new trial is awarded.

Van der Voort, J., dissents.