385 A.2d 521

COMMONWEALTH of Pennsylvania

v.

Leroy NAPPER, a/k/a John Jones, Appellant.

Superior Court of Pennsylvania.

Submitted Dec. 6, 1976.

Decided April 13, 1978.

Denis James Lawler, Philadelphia, for appellant.

Steven H. Goldblatt and Deborah E. Glass, Assistant District Attorneys, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is a most unusual case. At a PCHA hearing, appellant's trial counsel all but admitted that he had been ineffective in failing to advise appellant fully on the advisability of accepting a plea bargain. Under the circumstances of this case, we agree with counsel; and while we regret his ineffectiveness, we commend his candor.

In 1970 appellant, who was then 18 years old, was convicted by a jury on two indictments for aggravated robbery[1] and sentenced to two consecutive terms of five to twenty years. We affirmed *per curiam*. *Commonwealth v. Napper,* 218 Pa.Super. 809, 275 A.2d 376 (1971). The Supreme Court denied appellant's petition for allowance of appeal on August 4, 1971.

---

1. The Penal Code, Act of June 24, 1939, P.L. 872, § 705, 18 P.S. § 4705 (1963).

On February 23, 1976, appellant filed a petition under the Post-Conviction Hearing Act[2] in which he alleged that his trial counsel had been ineffective. The petition was denied, after a hearing, on June 3, 1976. This appeal followed.

Appellant argues that his counsel should have advised him more fully of the advantages and disadvantages of a plea bargain offered by the Commonwealth.[3] By trial counsel's testimony at the PCHA hearing, the facts surrounding the bargain were as follows. Before trial the district attorney offered to recommend a sentence of twelve or eighteen months (counsel was unsure which) to three years total sentence on both indictments.[4] Counsel advised appellant of the terms of the offer, but neither recommended that appellant should accept it, nor gave any advice on the advisability of accepting it. Appellant told counsel that if the offered sentence would mean "state time" (more than two years) he didn't want to plead guilty. After pleading not guilty, appellant went to trial, with the consequences reviewed above.

In deciding whether counsel was ineffective, we first ask whether the action or strategy that counsel decided against

**2.** Act of Jan. 25, 1966, P.L. (1965) 1580, § 1 et seq., effective March 1, 1966; 19 P.S. § 1180–1 *et seq.* (Supp.1977).

**3.** Appellant has not waived this claim by his failure to raise it on direct appeal to us or to the Supreme Court, since his trial and appeal counsel were members of the Philadelphia Defender Association. *Commonwealth v. Dancer,* 460 Pa. 95, 331 A.2d 435 (1975); *Commonwealth v. Via,* 455 Pa. 373, 316 A.2d 895 (1974); *Commonwealth v. Washington,* 239 Pa.Super. 336, 361 A.2d 670 (1976).

 We note that appellant's PCHA petition specifically alleged only that his trial counsel had been ineffective in failing to object to the trial court's charge on the elements of aggravated robbery. (This argument is also made in appellant's brief, but we do not reach it.) Arguably, without amendment of the petition, the claim we discuss here was not properly raised. However, the Commonwealth raised no objection to extensive testimony on this claim; the PCHA court itself, during the hearing, inquired closely into certain aspects of the claim; and the court discusses the claim specifically in its opinion. Under these circumstances, we conclude that the petition was effectively, albeit informally, amended.

**4.** The Commonwealth, appellee here, does not dispute that these were the terms of the offer.

or neglected had arguable merit. *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977). The question presents little difficulty here. A recommendation of twelve or eighteen months to three years is quite a "bargain" on indictments that could bring—and here did bring—a total sentence of ten to forty years. To be sure, if a defendant and his counsel think there is some chance of winning the case at trial, the bargain becomes less advantageous. In such a case we would have a difficult time reviewing the arguable merit of the bargain. Much would depend on the circumstances prevailing at the time and on counsel's judgment of the defendant's chances—factors on which an appellate court cannot and should not second-guess trial counsel. Here, however, we have the benefit of counsel's assessment of appellant's chances:

Q. [PCHA Counsel] Do you recall him [appellant] being aware that there was substantial incriminating evidence in this case?

[District Attorney]: Objection.

THE COURT: Overruled.

[Trial Counsel]: I'm aware that it was a stone cold loser.

Q. Were you aware at that time?

A. I was aware at that time.

THE COURT: By stone cold loser, you mean the case was—

[Trial Counsel]: The case could not have been won.

N. T. PCHA 31–32.

Thus, in counsel's eyes the advisability of accepting the plea bargain had, not simply arguable, but considerable merit.

We are not content, however, to rely solely on trial counsel's description; to do so would be to risk encouraging hindsight assistance by a defense attorney to gain his client a new trial. *Cf. Commonwealth v. Matt,* 249 Pa.Super. 107, 375 A.2d 777 (1977) (in *dictum,* noting the "risk that counsel may attempt to use the device of raising his own ineffectiveness on direct appeal as a vehicle to circumvent the [Supreme] Court's holding in *Clair* [*Commonwealth v. Clair,* 458

Pa. 418, 326 A.2d 272 (1974)]"). Therefore, as directed by *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352 (1967), we have made an independent review of the trial record. From that review the following appears.[5]

Appellant was charged with two robberies of the same bar. The same bartender was on duty both times. He testified that the first robbery lasted about twenty minutes; he observed the robber throughout from a close distance; and the bar was well-lighted. Shortly after this robbery the bartender recognized the robber twice on the street in the neighborhood of the bar, although neither time did he call the police because he was driving a taxicab with a passenger and did not think that he could inform the police in time for them to catch the man. The second robbery occurred less than three weeks after the first. A man entered the bar, ordered a beer, and almost immediately drew a pistol and jumped behind the bar. The bartender stated that he recognized the man immediately as the man who had robbed the bar earlier. This second robbery lasted between forty-five minutes and one hour, because the robber made repeated efforts to gain access to a safe in a back room. Again the bartender observed the robber throughout, from a close distance, in good light. About two weeks after the second robbery, the bartender saw the robber on the street. He immediately described him to the police, who apprehended appellant within minutes. At trial the bartender unequivocally identified appellant as the man who had robbed him twice and whom he had seen three times on the street. Appellant had, or at least offered, no defense, other than his counsel's attempts to shake the bartender's repeated and definite identification of appellant as the robber. These attempts were fruitless—in fact, they strengthened the identifications rather than weakened them. Under these cir-

---

**5.** In what follows we summarize the trial testimony. The essential points of this testimony were available to trial counsel before trial, by means of a suppression hearing held three days earlier.

cumstances, we agree with trial counsel that the case "was a stone cold loser." [6]

Having therefore concluded that appellant's claim has arguable merit, we next must ask whether trial counsel had a reasonable basis for doing what he did. *Commonwealth v. Hubbard, supra.* Since the case against appellant was very strong—in counsel's words, appellant "could not w[i]n" it—we would be hard pressed to imagine any good reason for counsel's failure to advise appellant that the case was very strong and the plea bargain offered therefore very advantageous. Here, as it happens, the reason for counsel's failure need not be imagined but is disclosed by the record; and not only is it not a good reason, it is a very bad one. Counsel testified as follows. Until he was assigned to this case he had tried only summary cases in Municipal Court. This case was his first assignment in the jury trial section of the Defender Association. In "offhandedly" presenting the plea bargain to appellant (N. T. PCHA 28), said counsel,

I had two things to work with. I had the fact that I had a plea bargain, and if he accepted it I would not have my first jury. If he did not accept it, I would have my first jury.

N. T. PCHA 29.

On cross-examination, the district attorney asked trial counsel whether his testimony was that his manner of presenting the bargain had been "colored" in some way by his eagerness to try his first jury trial. Counsel answered:

Well, I think what I said was that could have entered into it. I think the difference is had this case been presented to me two months after it was presented I would not have walked into Mr. Napper and offhandedly told him the plea. I would have walked into Mr. Napper— . . . I

---

**6.** The Commonwealth suggests that its case was not necessarily so strong, since appellant might have won suppression of the bartender's identification testimony. This misses the fact that appellant had *lost* his suppression motion three days before trial, leaving plenty of time for defense counsel to review the case as it then stood. Nor does the Commonwealth suggest any reason why the suppression motion was not properly lost.

would have walked in and told Mr. Napper that it was to his best interest to plea, and Mr. Napper, I would assume, would have pled.

N. T. PCHA 32–33.

 Defense counsel has a duty to communicate to his client, not only the terms of a plea bargain offer, but also the relative merits of the offer compared to the defendant's chances at trial. *See, e. g.,* A.B.A. Project on Standards for Criminal Justice: Standards Relating to The Prosecution Function and The Defense Function, (Approved Draft, 1971):

Advising the defendant.

(a) After informing himself fully on the facts and the law, the lawyer should advise the accused with complete candor *concerning all aspects of the case, including his candid estimate of the probable outcome.*

(b) It is unprofessional conduct for a lawyer *intentionally to understate* or overstate *the risks, hazards or prospects of the case to exert undue influence on the accused's decision as to his plea.*

*Id.,* The Defense Function § 5.1 (emphasis added).

*See also* I Amsterdam, Segal and Miller, Trial Manual for the Defense of Criminal Cases (1967):

The decision whether to plead guilty or contest a criminal charge is probably the most important single decision in any criminal case. This decision must finally be left to the client's wishes; counsel cannot plead a man guilty, or not guilty, against his will. But *counsel* may and *must give the client the benefit of his professional advice on this crucial decision,* and often he can protect the client adequately only by using a considerable amount of persuasion to convince the client that one course or the other is in the client's best interest. *Such persuasion is most often needed to convince the client to plead guilty in a case where a not guilty plea would be totally destructive. Id.* at 2–143 (emphasis added).

Here, counsel chose to neglect his duty "to give [appellant] the benefit of his professional advice on [the] crucial decision" whether to accept the plea bargain offer; his "offhanded" presentation, made for reasons entirely inappropriate to his client's interests, failed to make clear to appellant "the risks, hazards or prospects of the case." Under the circumstances, we must hold trial counsel ineffective, for we cannot conclude that he "made an informed choice, which at the time the decision was made reasonably could have been considered as advancing and protecting the appellant's interest." *Commonwealth v. Roundtree,* 469 Pa. 241, 249, 364 A.2d 1359, 1363 (1976).

We recognize that appellant might have rejected the plea bargain offer because it would have meant "state time." We also recognize that we cannot be sure that the trial court, which after trial imposed very heavy sentences, would have accepted the plea bargain. These uncertainties, however, in no way affect the fact that counsel, for no good reason, failed to take action that arguably might have furthered appellant's interests. In other words: It cannot be denied that upon proper advice, appellant might have accepted the offered plea bargain; nor that, while a court may reject a plea bargain, as a practical matter—especially in crowded urban courts—this rarely occurs. Finally, it should be noted that our decision gives appellant only imperfect relief. We cannot compel the Commonwealth to reinstate its plea bargain offer; nor can we dictate what sentence may be imposed if appellant pleads guilty without so advantageous an offer as he had before, or if he goes to trial and is again convicted.

The order of the lower court is reversed, and the judgments of sentence vacated. Before re-trial, appellant shall be afforded the opportunity to engage in plea bargain discussions, with advice of counsel.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

PRICE, J., concurs in the result.

VAN der VOORT, J., dissents.