J-S10032-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRANDON CALLUM | : | |
| | : | |
| Appellant | : | No. 1389 EDA 2022 |

Appeal from the PCRA Order Entered September 9, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0008254-2017

BEFORE: PANELLA, P.J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY STABILE, J.: **FILED JUNE 22, 2023**

Appellant, Brandon Callum, appeals from an order denying his petition for relief under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546. Counsel for Appellant has filed a motion to withdraw as counsel and a no-merit letter in accordance with **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988). We grant counsel's motion to withdraw and affirm the order denying Appellant's petition.

The evidence adduced during trial was as follows:

On April 23, 2017, [Appellant] and co-defendant Clive Foster, fatally shot Tahmeer Outlaw (the "decedent") on the 6900 block of Hegerman Street, in the city and county of Philadelphia. Gary Martin testified that he was outside of his home on the 6900 block of Hegerman Street doing yard work when he saw the decedent walk past and then double back and walk in the opposite direction. Martin did not know the decedent. Martin then went to the side of his house and heard four to five gunshots. He ran out into the street and saw the decedent lying in the middle of the street,

bleeding from his chest. Martin called the police and waited for them to arrive. N.T., 7/16/2018 at 45-52.

Khadijah Robinson testified that at approximately 4:55 p.m. on April 23, 2017, she was standing on her porch on the 6900 block of Hegerman Street when she saw a white Honda drive by twice. The Honda was occupied by two males who were looking around. Her attention was drawn to the vehicle because she thought the driver was "cute" and she thought the pair was looking for someone. The passenger was wearing a hood pulled up on his head and was seated in a fully reclined position. The driver was light-skinned with sandy brown hair, wearing a white T-shirt. Robinson went inside for a moment, and, upon hearing gunshots, ran to the door and saw the white Honda "speeding" down Hegerman Street. The next day, Robinson reported what she had witnessed to police. Thereafter, she gave a statement to homicide detectives and identified [Appellant] from a photo array as the driver of the vehicle. *Id.* at 54-70.

Angelo Giorno testified that he lives on the 6900 block of Hegerman Street. On April 23, 2017, he was sitting outside at approximately 5:15 p.m. when he heard multiple gunshots. He observed a white Honda "fly by" at a high rate of speed and go through a stop sign. He was taken by police to the 6700 block of Tulip Street where he positively identified the Honda. N.T., 7/17/2018 at 93-107.

Anthony Giorno testified that he was sitting outside on the 6900 block of Hegerman Street on the date of the incident. At approximately 5:15 p.m., he heard six gunshots and observed a four-door white Honda drive by at a high rate of speed and go through a stop sign. There were two males in the vehicle. Both had hoods up. The driver was light-skinned. Anthony Giorno identified a white Honda shortly after the incident. N.T., 7/18/2018 at 54-68.

Jennifer Van Deursen testified that [Appellant] lived with her on the 6900 block of Tulip Street, which is approximately three blocks from where this incident occurred. Van Deursen had asked [Appellant] to move out of her residence two days before the incident due to relationship issues. On the date of the incident, she saw [Appellant] earlier in the day standing next to a white Honda. At the time of the incident, she heard that there was a shooting and went to the scene, but could not get onto Hegerman

Street due to police barricades. She walked back to her house and found [Appellant] in her living room. Upon seeing her, [Appellant] left the house. N.T., 7/16/2018 at 129-35.

Police Officer [Justin] Hynes testified that on April 23, 2017, he was responding to a radio call giving a flash of a shooting involving a white Honda on the 6900 block of Hegerman Street. He was then notified that an officer was in foot pursuit nearby. He joined in the foot pursuit and arrested a male who jumped from a garage. That male was the co-defendant, Clive Foster. *Id.* at 138-44.

Detective Thorsten Lucke from the Homicide Division testified that he recovered video from a private residence located at 6955 Hegerman Street and from an automotive business located at 6701 Tulip Street. The videos were played for the jury. The video from Hegerman Street show[ed] a white vehicle turn onto Hegerman Street at approximately 5:04 p.m. The vehicle [was] then seen again turning onto Hegerman behind a young male, who is on foot, at approximately 5:13 p.m. The first call to police reporting a shooting was at approximately 5:16 p.m. Thereafter, at approximately 5:28 p.m., the camera on the 6700 block of Tulip Street show[ed] the same white vehicle with a male exiting it and running. At approximately 5:34 p.m., that male reappear[ed] on the video in the custody of the police. That male [was] the co-defendant. *Id.* at 110-26.

Police Officer Jacqueline Davis from the Crime Scene Unit of the Philadelphia Police Department testified that on April 23, 2017, she was called to investigate a crime scene located on the 6900 block of Hegerman Street. Additionally, she investigated a white Honda Accord located on the 6700 block of Tulip Street. P.O. Davis recovered a handgun—a nine-millimeter Smith and Wesson—from the glove compartment of the vehicle, four fired cartridge casings ("FCCs") from the passenger front and rear seats, a pack of Newport cigarettes, and a social security card and a driver's license in [Appellant]'s name. P.O. Davis swabbed the exterior and interior doors and windows of the vehicle for DNA. She also swabbed the gun and the Newport cigarette box. P.O. Davis lifted fingerprints from various locations outside and inside the vehicle. *Id.* at 147-78.

Patrick Raytik testified that he is employed as a Forensic Scientist with the city of Philadelphia. He examined fingerprint cards associated with lifts from a white Honda Accord submitted for this

incident. A palm print recovered from the driver-side front door of the vehicle and a palm print recovered from the passenger-side front door of the vehicle matched [Appellant]. A palm print from the passenger-side door matched the co-defendant. A fingerprint from the interior passenger-side front door matched the co-defendant. A fingerprint from the interior rear-view mirror and a fingerprint from the Newport pack matched [Appellant]. Two fingerprints from the gun magazine matched [Appellant]. N.T., 7/17/2018 at 45-52.

Counsel stipulated that Rui Fen Kubiak would testify as an expert in DNA analysis that she performed DNA analysis on the samples recovered from the Honda Accord and found [Appellant]'s DNA on the driver-side door exterior. N.T., 7/18/2018 at 14-16.

Dr. Daniel Brown from the Medical Examiner's Office testified that he performed an autopsy on the decedent. The decedent died from a gunshot wound to the chest—the bullet passed through his lung and aorta. Dr. Brown recovered a bullet from the decedent's body. N.T., 7/17/2018 at 18-28.

Police Officer [Raymond] Andrejczak from the Firearms Identification Unit of the Philadelphia Police Department testified that the FCCs recovered from the Honda Accord matched the weapon recovered from the glove box and also matched a bullet recovered from the decedent's body that was turned over from the Medical Examiner's Office. *Id.* at 79-89.

Hung Le testified that he is a forensic scientist employed by the Philadelphia Police Department. He is qualified as an expert in the identification of gunshot residue. Le analyzed clothing recovered from the co-defendant and found that his pants and t-shirt were positive for gunshot residue. No clothing was analyzed for [Appellant]." *Id.* at 134-39.

Special Agent Purfield from the Attorney General's Office testified as an expert in digital forensics. Agent Purfield received a phone recovered from [Appellant] and downloaded information contained within the phone. The call log showed that [Appellant] and co-defendant had 231 contacts between March 28, 2017, and April 23, 2017. A review of internet searches conducted on the phone revealed that there was a search performed on April 24, 2017, for "shooting last night in Philly." On April 27, 2017, there was a search for "cheap hotels in Horsham/Phila."; "days inn

Phila."; "days inn/Bensalem"; and "Pa court dockets." On April 28, 2017, there was a search for "court dockets Pa." On April 29, 2017, there was a search for "Days Inn Bensalem, Pa."; "cheap hotels near me"; and "Roosevelt Inn." *Id.* at 115-24.

Detective Dunlap from the Homicide Division testified that he is an expert in cellular site analysis. He analyzed [Appellant]'s phone for its location on the date and time of the incident. The phone was utilizing a cell tower that covered service to the crime scene. *Id.* at 158-68.

Police Officer Gary Mercado testified that on May 4, 2017, he conducted a routine traffic stop on a white Honda Accord owned by a Celeste Stevens. [Appellant] was the driver of that vehicle. The officer became aware that [Appellant] was wanted for questioning by homicide detectives so [Appellant] was taken to Homicide. *Id.* at 174-81.

Detective John Keen from the Homicide Division testified that on May 6, 2017, he received a fingerprint report that indicated that [Appellant]'s fingerprints matched those lifted from the gun magazine found in the car. Thereafter, a warrant was issued for [Appellant]'s arrest. N.T., 7/18/2018 at 20-37.

Sargent [Kenneth] Rutherford, from the Lansdowne Police Department, testified that he was contacted by Philadelphia Police on May 24, 2017, and given the possible whereabouts of [Appellant] in his jurisdiction. He went to the location and came in contact with [Appellant]. However, after a struggle, [Appellant] fled and could not be located. *Id.* at 76-84.

Detective [Kevin] Judge from the Philadelphia Homicide Division testified that [Appellant] was arrested on June 1, 2017, after a search of a residence revealed [Appellant] hiding under a pile of clothing and blankets. *Id.* at 88-108.

Counsel stipulated that Celeste Stevens would testify for the defense that [Appellant] is her son and that she is the owner of a 1999 white Honda Accord which [Appellant] uses. She has known the co-defendant for approximately five years as a friend of her son. N.T., 7/17/2018, at 111.

Pa.R.A.P. 1925(a) Opinion, 10/11/2018, at 2-7. We also note that following police investigation after the murder, the Honda was released to Stevens. This detail explains why Appellant was driving the Honda on May 4, 2017, eleven days after the murder.

Prior to Appellant's trial, codefendant Foster pled guilty to third degree murder before the same judge who presided over Appellant's jury trial.

On July 19, 2018, following a jury trial, Appellant was found guilty of first-degree murder, conspiracy to commit murder, firearms not to be carried without a license, carrying firearms in public in Philadelphia and possession of an instrument of crime. Appellant was sentenced that day to life imprisonment without the possibility of parole on his convictions for first-degree murder and conspiracy to commit murder. Appellant filed a timely post-sentence motion, which was denied, and a timely appeal to the Superior Court. The lone issue raised on direct appeal was whether Appellant's sentence for conspiracy of life imprisonment without the possibility of parole was legal. On January 7, 2020, this Court affirmed Appellant's convictions but found that his sentence for conspiracy was illegal. We reduced Appellant's sentence on the conspiracy conviction to twenty to forty years' imprisonment. In all other respects, we left Appellant's judgment of sentence intact. Appellant did not appeal to the Pennsylvania Supreme Court.

On September 23, 2020, Appellant filed a timely PCRA petition raising a series of claims of ineffective assistance of counsel. The court appointed counsel to represent Appellant. On May 25, 2021, PCRA counsel filed a

*Finley*/*Turner* "no merit" letter. On August 11, 2021, the PCRA court accepted counsel's no merit letter and issued a Pa.R.Crim.P. 907 Notice of Intent to Dismiss. On September 9, 2021, the court dismissed Appellant's PCRA petition. No appeal was filed.

On November 9, 2021, Appellant filed a subsequent *pro se* PCRA petition requesting reinstatement of his right to appeal *nunc pro tunc* from the dismissal of his first PCRA petition. On May 3, 2022, the PCRA court reinstated Appellant's appellate rights *nunc pro tunc*, finding that first PCRA counsel's withdrawal was never properly docketed, leaving Appellant unaware that he was required to file a notice of appeal *pro se*. The PCRA court appointed new counsel.

On May 16, 2022, Appellant filed a notice of appeal to the Superior Court. On June 27, 2022, PCRA counsel filed a Notice of Intent to File an *Anders*[1] Brief pursuant to Pa.R.A.P. 1925(c)(4) in lieu of a Statement of Matters Complained on Appeal.

In this Court, counsel for Appellant has filed an application to withdraw and an *Anders* brief, asserting that Appellant's appeal is frivolous and requesting permission to withdraw from representation. Appellant did not file any brief in response to counsel's application to withdraw or the *Anders* brief.

We first address counsel's application to withdraw. In order for PCRA counsel to withdraw under *Turner*/*Finley* in this Court:

_____

[1] *Anders v. California*, 386 U.S. 738 (1967).

(1) PCRA counsel must file a no-merit letter that details the nature and extent of counsel's review of the record; lists the appellate issues; and explains why those issues are meritless.

(2) PCRA counsel must file an application to withdraw; serve the PCRA petitioner with the application and the no-merit letter; and advise the petitioner that if the Court grants the motion to withdraw, the petitioner can proceed *pro se* or hire his own lawyer.

(3) This Court must independently review the record and agree that the appeal is meritless.

*Commonwealth v. Widgins*, 29 A.3d 816, 817-18 (Pa. Super. 2011).

Counsel for Appellant complied with these procedural and substantive requirements. Counsel stated in his petition to withdraw that he found Appellant's issues to be frivolous after conducting a thorough review of the record. Petition to Withdraw as Counsel, 10/13/22, at 2-3. Counsel attached to his petition a copy of the letter he sent to Appellant advising him he could retain private counsel or proceed *pro se.* *Id.* at ex. A. Counsel also provided Appellant with a copy of the *Anders* brief[2] which summarizes the facts and procedural history, includes issues that could arguably support Appellant's appeal, and explained why the issues are meritless. Accordingly, we turn to the issues raised in this appeal.

_____

[2] It is well-settled that *Anders* applies only when counsel seeks to withdraw from representation on direct appeal, and that *Turner*/*Finley* applies when counsel seeks leave to withdraw from a collateral appeal such as the present case. Even so, we will accept counsel's *Anders* brief in lieu of a *Turner/Finley* no-merit letter, because an *Anders* brief provides greater protection to Appellant. *Commonwealth v. Widgins*, 29 A.3d 816, 817 n.2 (Pa. Super. 2011) (accepting *Anders* brief in lieu of *Turner*/*Finley* letter).

"On appeal from the denial of PCRA relief, our standard of review requires us to determine whether the ruling of the PCRA court is supported by the record and free of legal error." *Widgins*, 29 A.3d at 819. As this Court has explained:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012). When a petitioner asserts an ineffectiveness claim, he is entitled to relief if he pleads and proves that prior counsel rendered ineffective assistance of counsel. 42 Pa.C.S.A. § 9543(a)(2)(ii). "To prevail on an [ineffectiveness] claim, a PCRA petitioner must plead and prove by a preponderance of the evidence that (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for acting or failing to act; and (3) the petitioner suffered resulting prejudice." *Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 780 (Pa. Super. 2015) (*en banc*). "A petitioner must prove all three factors of the [ineffectiveness] test, or the claim fails." *Id.* A failure to satisfy any one of the three prongs of the test for ineffectiveness requires rejection of the claim. *Commonwealth v. Cook*, 952 A.2d 594, 614 (Pa. 2008). "The burden of

proving ineffectiveness rests with [the petitioner]." ***Commonwealth v. Chmiel***, 889 A.2d 501, 540 (Pa. 2005).

The ***Anders*** brief submitted by Appellant's attorney raises a single issue, "Did the PCRA Court err when it dismissed [Appellant's] PCRA petition without a hearing as not raising a meritorious claim under the PCRA?" ***Anders*** Brief at 5. The ***Anders*** brief goes on to address the claims of ineffective assistance raised in Appellant's *pro se* PCRA petitions and concludes that they lack arguable merit. We examine each claim *seriatim*.

Appellant claims that counsel was ineffective for failing to properly consult with him regarding the plea offer. "Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process. During plea negotiations defendants are entitled to the effective assistance of competent counsel." ***Lafler v. Cooper***, 566 U.S. 156, 132 (2012); ***Commonwealth v. Marinez***, 777 A.2d 1121, 1124 (Pa. Super. 2001). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." ***Missouri v. Frye***, 566 U.S. 134, 132 (2012). Moreover, counsel "has a duty to communicate to his client, not only the details of a plea bargain offer, but also the relative merits of the offer compared to the defendant's chances at trial," ***Commonwealth v. Napper***, 385 A.2d 521, 524 (Pa. Super. 1978), and "the advantages and disadvantages of accepting or rejecting it." ***Commonwealth v. Boyd***, 688 A.2d 1172, 1174

(Pa. 1997). The defendant "cannot make an informed choice without such assistance from counsel." *Id.* The PCRA affords relief where a defendant's attorney fails to provide effective representation in the context of plea negotiations. *Napper*, 385 A.2d at 524.

Prior to trial, the Commonwealth put on the record that it conveyed a plea deal to Appellant of 22½ to 45 years' imprisonment on the charges of third-degree murder, conspiracy and firearms offenses. N.T., 7/13/18 at 3-14. The court conducted a colloquy to ensure that Appellant understood the details of the offer and was able to make a knowing and intelligent decision. *Id.* The court gave Appellant the opportunity to confer privately with his attorney during the colloquy. *Id.* at 13-14. Three days later, before commencing trial, the court conducted a second on-the-record colloquy with Appellant concerning the offer. N.T., 7/16/18, at 5-14. The record demonstrates that Appellant's claim that trial counsel failed to adequately convey a plea offer lacks arguable merit.

Next, Appellant claims that trial counsel was ineffective for not objecting to alleged improper and prejudicial statements and questions from the Commonwealth. Appellant failed, however, to identify the alleged improper statements or questions, and defense counsel was unable to identify any improper statements or questions in the record. Accordingly, the PCRA court properly denied Appellant relief on this claim.

Appellant next claims that counsel was ineffective for failing to conduct an independent investigation of the ballistics evidence. Appellant fails to identify what would have been disclosed by an independent investigation of the ballistic evidence. The Commonwealth's expert prepared a report in advance of trial and testified that cartridge casings recovered in the Honda owned by Appellant's mother were fired from a handgun recovered in the same car immediately after the murder. The expert also testified that a bullet recovered from the victim's body was fired from this gun. Counsel thus observed that "[i]t is unclear what point, if any, the expert ballistician could have been challenged on. Further, the thrust of Appellant's defense was misidentification. It is not clear how a challenge to an undisclosed point of the ballistic evidence would have furthered this unsuccessful defense." *Anders* Brief at 41. We agree, and we conclude that this claim lacks arguable merit.

Next, Appellant claims that counsel was ineffective for failing to file a motion to suppress an identification made by a Commonwealth witness, Khadijah Robinson. According to Appellant, Robinson revealed during her testimony that she initially identified Appellant because police officials showed her Appellant's photograph alone instead of in a photo array. We agree with counsel for Appellant that this claim lacks arguable merit.

"[W]here an assertion of ineffective assistance of counsel is based upon the failure to pursue a suppression motion, proof of the merit of the underlying

- 12 -

suppression claim is necessary to establish the merit of the ineffective assistance of counsel claim." ***Commonwealth v. Jones***, 942 A.2d 903, 909 (Pa. Super. 2008). Appellant must also establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable." ***Commonwealth v. Arch***, 654 A.2d 1141, 1143 (Pa. Super. 1995).

Robinson testified that at approximately 4:55 p.m. on April 23, 2017, she was standing on her porch on the 6900 block of Hegerman Street when she saw a white Honda drive by twice. The Honda was occupied by two males who were looking around. Her attention was drawn to the vehicle because she thought the driver was "cute" and she thought the pair was looking for someone. The passenger was wearing a hood pulled up on his head and was seated in a fully reclined position. The driver was light-skinned with sandy brown hair, wearing a white T-shirt. Robinson went inside for a moment, and, upon hearing gunshots, ran to the door and saw the white Honda "speeding" down Hegerman Street. The next day, Robinson reported her observations to police. Thereafter, she gave a statement to homicide detectives and identified Appellant from a photo array as the driver of the vehicle. N.T., 7/16/18, at 54-70.

A detective showed Robinson an array of six photographs. Exhibit C-20 (photo array). The detective did not know which individual in the array was

the suspect. N.T., 7/18/18, at 31 (detective's testimony). Each photograph was of a black male of similar age with relatively short-cropped hair, facial hair, and no visible facial tattoos or significant scars. Exhibit C-20. The height and weight of the men in the photos was unknown because the photos only showed their heads. *Id.* Appellant failed to demonstrate that the detective posed leading or suggestive questions to Robinson that tainted the identification procedure.

Photo arrays are not unduly suggestive if the suspect's picture does not stand out more than the others, and all of the people depicted exhibit similar facial characteristics. *Commonwealth v. Fulmore*, 25 A.3d 340, 346 (Pa. Super. 2011). The photo array in this case satisfies these standards. There is no evidence that the detective who showed Robinson the photo array did anything leading or suggestive. Nor is there any evidence that supports Appellant's claim that his photograph was the only photo showed to Robinson. Thus, Appellant's claim that defense counsel was ineffective for failing to move to suppress the photo identification lacks arguable merit.

Next, Appellant claims that counsel was ineffective for failing to object to vouching by the prosecutor in closing arguments for the truthfulness of Commonwealth witnesses. "Improper bolstering or vouching for a government witness occurs where the prosecutor assures the jury that the witness is credible, and such assurance is based on either the prosecutor's personal knowledge or other information not contained in the record."

*Commonwealth v. Chmiel*, 30 A.3d 1111, 1180 (Pa. 2011). Vouching can occur when the prosecutor "elicit[s] improper comments from a Commonwealth witness" on a witness's credibility. *Commonwealth v. Tedford*, 960 A.2d 1, 32 (Pa. 2008).

In this case, Appellant failed to identify any instance where the prosecutor argued that a witness was credible based on the prosecutor's personal knowledge or on information not within the record. Accordingly, we agree with counsel that Appellant's claim lacks arguable merit.

Next, Appellant claims that trial counsel was ineffective for not objecting to the medical examiner's testimony regarding the decedent's pain and suffering. The record demonstrates that the medical examiner never testified to the decedent's pain and suffering. N.T., 7/17/2018 at 9–35. The expert merely testified about the cause of death, manner of death, and recovery of a bullet which was later analyzed by an expert ballistician. *Id.* Accordingly, we agree with counsel that Appellant's claim lacks arguable merit.

Next, Appellant claimed that trial counsel was ineffective for not objecting to the Commonwealth's line of questioning during re-direct examination of the Commonwealth's fingerprint comparison expert. Appellant claimed that the line of questioning improperly shifted the burden of proof on Appellant.

On direct examination, the expert testified that he determined that fingerprints found on the murder vehicle and a loaded magazine in that car

were Appellant's by comparing these fingerprints to fingerprints collected from Appellant while in custody. N.T. 7/17/2018, at 41–52. On cross examination, defense counsel asked whether another examiner verified the expert's determinations. The expert answered that another examiner performs his own comparison of the fingerprints and verifies the original determination if he agrees with the determination. Defense counsel questioned the credibility of this process because the verifying examiner can see the original expert's report and determination. *Id.* at 53–58. On re-direct examination, the Commonwealth asked whether defense counsel ever asked to look at the fingerprints to do his own comparison. *Id.* at 61. The expert answered "no." *Id.*

A fundamental requirement of due process is that no one may be convicted of an offense unless each element has been proved beyond a reasonable doubt. *In Re Winship*, 397 U.S. 358, 362-63 (1970). After *Winship*, "it is clear that the burden of proving an essential element of the crime may not be shifted to the defendant." *Commonwealth v. McNeil*, 337 A.2d 840, 843 (Pa. 1975).

Appellant's *Anders* brief argues that the prosecutor's questions on redirect examination shifted the burden of proof to Appellant by suggesting that he had the burden of demanding and testing the fingerprints himself. Nevertheless, the brief continues, Appellant is not entitled to relief on this issue because of his inability to establish prejudice. The Commonwealth

responds that it did not shift the burden of proof but simply rebutted defense counsel's challenge to the integrity of the testing process.

We need not examine whether this claim has arguable merit, because we agree with Appellant's counsel that Appellant cannot establish prejudice from the prosecutor's redirect examination. *Cook*, 952 A.2d at 614 (failure to satisfy any one of the three prongs of ineffectiveness test requires rejection of claim). The trial court instructed the jury in its opening and closing charge that the burden of proof in Appellant's trial is always on the Commonwealth and never on Appellant. N.T., 7/16/18 at 20; N.T., 7/19/18 at 68-69. The jury is presumed to have followed these instructions. *Commonwealth v. Flor*, 998 A.2d 606, 632 (Pa. 2010) (jury is presumed to follow court's instructions). Furthermore, the evidence summarized above, including testimony from multiple eyewitnesses, videotape evidence, ballistics evidence and Appellant's conduct after the shooting overwhelmingly demonstrates his guilt. An objection during the expert's testimony to the Commonwealth's redirect examination would not have changed the outcome. Accordingly, we agree with counsel for Appellant that this claim did not entitle Appellant to relief.

Next, Appellant claimed that defense counsel was ineffective for failing to object to the testimony of the Commonwealth's cell phone experts as speculative. This claim lacks arguable merit.

Detective Dunlap, one of the Commonwealth's cell phone experts, testified that he had been trained by the FBI to determine the area a phone was in when it was making a text or phone call, otherwise known as historical cell site analysis. Cell site analysis looks at the cell phone tower and which cardinal direction of the tower a cell phone connected with to make a text or call. Because towers are within one mile of each other and cell phones generally connect with the closest tower they can, cell site analysis can place individuals within a one- or two-square mile area. The detective testified to his qualifications, which included a 24-hour course in 2007, 2010, and 2012, an advanced 36-hour course in 2014, 160 hours of training in 2015, and week-long trainings in 2016 and 2018. As a result of his course performance, he was accepted into the FBI's Cellular Analysis Survey Team. He has testified over thirty times in two years, including for the defense. Based on these qualifications, the trial court accepted the detective as an expert in historical cell site analysis. N.T., 7/17/2018, at 143–53. The detective went on to testify that Appellant's phone connected to the cell tower closest to the murder scene 2,000 times in the six weeks before and after the killing. The detective noted that the tower also covered the area in which Appellant's home was located.

Special Agent Joseph Purfield, the Commonwealth's second cell phone expert, performs digital forensics on cell phones for the Pennsylvania Office of Attorney General to extract stored information. He holds a certification to use

a special program to extract information from Appellant's phone, and he has extracted information from hundreds if not thousands of phones. He also has testified about a half dozen times as an expert. *Id.* at 112–15. Agent Purfield testified to the internet search history and communications on Appellant's cell phone before and after the shooting.

We agree with Appellant's counsel that nothing about these two experts' testimony was speculative or outside of their expertise. Accordingly, Appellant's objection to trial counsel's failure to object to their testimony lacked arguable merit.

Next, Appellant contends that defense counsel was ineffective for failing to object, on grounds of hearsay, when Detective Keen testified that codefendant Clive Foster's nickname was Kris. We agree with Appellant's counsel that this claim fails for lack of prejudice.

The Commonwealth introduced evidence that Appellant's phone had numerous communications with "Kris". Foster was arrested fleeing from the vehicle used to commit the murder, and his fingerprints were found on the vehicle. Although Foster did not testify during trial, Detective Keen testified that Foster told him that his nickname was Kris. The **Anders** brief asserts that Detective Keen's testimony was hearsay but that it did not prejudice Appellant. We agree. Other evidence established that Foster was known as Kris and was a close friend of Appellant. The parties stipulated that Appellant's mother would testify that she knew Foster as "Kris", she knew Kris for four to

five years, and she knew Kris to be a friend of Appellant. Further, other evidence showed that Appellant was the shooter irrespective of Foster's identity. Multiple people saw a white Honda circling the area at the time of the shooting with two men inside who appeared to be looking for someone. Khadijah Robinson identified the driver from a photo array as Appellant. Multiple people also saw the white Honda speed away after the shooting, speeding through a stop sign. The vehicle used in the murder belonged to Appellant's mother and contained the murder weapon. Appellant's fingerprints were found on the car and on a magazine. Appellant's search history after the shooting showed that he was searching for news articles and court details about the shooting and for temporary locations to stay. Thus, Appellant cannot show by a reasonable probability that the outcome of trial would have been different had Detective Keen's testimony about "Kris" not been admitted. *See Commonwealth v. Treiber*, 121 A.3d 435, 451-52 (Pa. 2014) (court assumed there was arguable merit to claim that defense counsel was ineffective for failing to object to admission of canine DNA evidence in murder and arson prosecution, where this evidence tended to link defendant's dog and thus defendant to threatening note found by defendant's girlfriend; even so, no PCRA relief warranted because there was other extensive evidence of defendant's preparatory activities prior to fire and other evidence suggesting his connection to threatening note).

Next, Appellant claims that trial counsel was ineffective for not objecting to Detective Keen's testimony that he showed a picture of codefendant Foster to Commonwealth witness Robinson after Foster's arrest. The record shows that Detective Keen testified that he did not show a photo of Foster to Robinson. N.T., 7/18/2018, at 38, 48. Therefore, this claim lacks arguable merit.

Next, Appellant claims that defense counsel was ineffective for failing to file a recusal motion after the trial judge heard highly prejudicial testimony from codefendant Foster that Appellant was the shooter in Outlaw's death. Prior to trial, the same judge who presided over Appellant's jury trial accepted Foster's guilty plea to third degree murder. During his plea, Foster claimed that Appellant was the shooter. Appellant argued in his *pro se* PCRA petition that the judge should have recused herself, citing ***Commonwealth v. Stevenson***, 829 A.2d 701 (Pa. Super. 2003); ***Commonwealth v. Conti***, 345 A.2d 238 (Pa. Super. 1975); and ***Commonwealth v. Bryant***, 476 A.2d 422 (Pa. Super. 1984). None of these decisions are on point.

In ***Stevenson***, a judge who was the target of an active FBI investigations told the Commonwealth and defense that they should consider asking for him to recuse himself as a result of the ongoing investigation and the judge's strong personal feelings about the same. When the Commonwealth filed a motion for recusal, the court denied it. This Court held that denial of the recusal motion was error in view of his statement to the

parties. *Id.*, 829 A.2d at 705. In the present case, there is no evidence that the trial judge was the subject of an investigation which affected her impartiality.

In *Conti*, the defendant was tried by a judge sitting without a jury. During trial, the Commonwealth's chief witness testified that the defendant pled guilty to the crimes during preliminary hearing. The defendant testified in his own defense, thus making his credibility of paramount importance. Because the judge who learned of the defendant's own guilty plea was also the trier of fact in a case in which there was not overwhelming evidence of guilt, this Court held that the trial court should have granted a recusal under these circumstances. *Id.*, 345 A.2d at 245-46. In the present case, while the trial judge knew that the co-defendant pled guilty (and inculpated Appellant during the plea), the judge did not sit as the trier of fact. A jury determined guilt or innocence and was unaware of the co-defendant's statements to the trial judge.

In *Bryant*, the defendant was found guilty by three different juries in three different trials, all conducted before the same trial judge. During an *in camera* conference regarding one of the matters, the trial judge allegedly stated that (1) in order to generate preelection publicity for himself, the date for the sentencing hearing in the defendant's first case would be changed from November 8 to November 5, the day immediately preceding the election in which the judge was a candidate, and (2) that he would give the maximum

possible sentences to the defendant in both cases. Under these circumstances, we held that the court should have granted defense counsel's motion seeking recusal of the judge at the sentencing hearing. *Id.*, 476 A.2d at 425-26. There was no evidence that the trial court in the present case allowed the knowledge of the codefendant's plea to influence the sentence imposed. In fact, the trial court sentenced Appellant to the mandatory minimum sentence and ordered all other sentences to be served concurrently.

In short, the decisions cited in Appellant's *pro se* petition are inapposite. The fact that the trial court heard Foster's guilty plea is of no moment, since a jury decided Appellant's case instead of the court, and since there is no indication that Foster's plea influenced the length of Appellant's sentence. Appellant's claim lacks arguable merit.

Next, Appellant claims that trial counsel was ineffective for not filing a motion to dismiss his charge for carrying a firearm without a license. He argued that the Commonwealth never introduced evidence that he was not licensed to carry a firearm. The record reflects, however, that the parties stipulated that defendant was not licensed to carry a firearm. N.T., 7/18/2018 at 114. Thus, this claim lacks arguable merit.

Next, Appellant claims that trial counsel was ineffective for failing to conduct an investigation, and that an investigation of the Commonwealth witnesses would have revealed that each witness was led or coached to lie about what they saw in order to get a conviction. Appellant's argument is

essentially a re-litigation of the facts of the case and witness credibility for which he offers no evidence to substantiate his claims. ***Commonwealth v. Hall***, 867 A.2d 619, 630 (Pa. Super. 2005) (petitioner must identify documents and evidence showing facts warranting relief). Accordingly, we agree with Appellant's counsel that this claim lacks arguable merit.

Next, Appellant claims that trial counsel should have objected to testimony that Appellant was in possession of the murder weapon (11/9/2021 PCRA Petition, 18–20). Appellant failed to articulate any legal basis on which counsel could object. The Commonwealth relied on circumstantial evidence that Appellant had been in possession of the murder weapon: Appellant's fingerprints were on the murder vehicle, Appellant was sighted in the murder vehicle, Appellant's fingerprints were on the magazine associated with the murder weapon. Indeed, all of this evidence was properly admitted through eyewitness and expert testimony. Accordingly, we agree with Appellant's counsel that this claim lacks arguable merit.

Next, Appellant claims that trial counsel was ineffective for failing to file a motion to suppress the evidence of his fingerprints on the magazine of the murder weapon. His argument is merely that there was insufficient evidence to sustain the inference that he actually possessed and used the murder weapon. Because Appellant failed to allege that the evidence was obtained in violation of his rights, there is no merit to his claim that the fingerprint evidence should have been suppressed. ***See*** Pa.R.Crim.P. 581(H) ("[t]he

defendant's attorney . . . may make a motion to the court to suppress any evidence alleged to have been obtained in violation of the defendant's rights"); ***Commonwealth v. Wallace***, 42 A.3d 1040, 1047–48 (Pa. 2012) (same). Accordingly, we agree with Appellant's counsel that this claim lacks arguable merit.

Next, Appellant claims that trial counsel was ineffective for stipulating that Appellant was in possession of a gun. The record reflects that defense counsel made no stipulation. Counsel only stipulated that Appellant did not have a license to carry a gun. Accordingly, we agree with Appellant's counsel that this claim lacks arguable merit.

Appellant claims that trial counsel was ineffective for allowing the admission of evidence about codefendant Foster, because Foster's case "was not related in any way to evidence linking [Appellant] to the killing of" the victim. PCRA Petition, 11/9/2021, at 22–24. Appellant failed to identify any legal basis on which the evidence was improper. Evidence of Foster's involvement was relevant because he and Appellant were charged with conspiracy and worked together to kill the victim. Accordingly, we agree with Appellant's counsel that this claim lacks arguable merit.

Next, Appellant claims that trial counsel was ineffective for failing to file a motion to dismiss all charges against him because the evidence was insufficient. We agree with Appellant's counsel that this claim has no arguable merit. Appellant and his passenger were the only men in the area other than

the victim. The murder weapon had Appellant's fingerprints on the magazine. The fired cartridge casings found in the car were consistent with the driver, Appellant, being the shooter. These facts, along with the other substantial evidence discussed above, was sufficient to show that Appellant intentionally killed the victim.

Finally, Appellant claims that counsel was ineffective for failing to appeal to the Supreme Court on direct appeal. Appellant raised only one claim in this Honorable Court on direct appeal, a challenge to the legality of the sentence imposed for conspiracy. This Court agreed with Appellant and granted him relief on that claim by reducing the sentence for conspiracy from life imprisonment without parole to twenty to forty years of incarceration. Because Appellant obtained relief on the only claim raised in this Court, there was nothing to gain through an appeal to the Supreme Court. Accordingly, we agree with Appellant's counsel that this claim lacked arguable merit.

For these reasons, we agree with Appellant's counsel that Appellant is not entitled to relief. We grant counsel's motion to withdraw and affirm the order denying Appellant's PCRA petition.

Motion to withdraw as counsel granted. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/22/2023